Points decided.

[Filed February 7, 1887.]

# J. F. BEEZLEY v. J. B. CROSSEN ET AL.

CONTRACT — LEASE — ASSIGNMENT — ADVANCES — ATTACHMENT.—On the 1st of October, 1883 Joseph Beezley and May L. Booth leased and delivered to William Wigle a band of sheep for the term of three years. It was stipulated in the lease that Wigle was to keep and care for the sheep, and on the first day of July of each year deliver all the wool shorn from them to the lessors, who were to sell the same, and after defraying necessary expenses, &c., to pay to Wigle half the net proceeds, less any sum they may have advanced to him to enable him to perform the contract on his part; the title of the sheep during the term to be in the lessors, and at the end thereof the sheep and their increase to be divided in a specified manner, the lessors still retaining their lien for any such advances upon the sheep going to Wigle. On the 7th of March, 1885, Joseph Beezley assigned to Alma C. Beezley " all his right, title, and interest in and to" said sheep, " to have and to hold the same, together with all the rents, issues, and profits thereof, unto said Alma C. Beezley, her executors, administrators and assigns forever"; and on the 18th of March, 1885, Alma C. assigned to the plaintiff in substantially the same words. A creditor of Wigle's levied an attachment upon his interest in the wool for 1885, and after obtaining a judgment, sold it under execution issued thereon. The plaintiff claims to hold the interest of Wigle in said wool for advances made by Joseph Beezley to William Wigle, and brings this action against the attaching creditor and sheriff for a conversion, who justify under said attachment proceedings. *Held:*

(1.) That under the lease, the lessors and lessee were tenants in common of the wool, and that Wigle had such an interest in the wool in controversy as was liable to attachment, subject to the rights of the lessors under the terms of the lease.

(2.) That the assignments from Joseph to Alma C., and from the latter to the plaintiff, whatever their effect upon the rents, issues, and profits reserved to Joseph Beezley in the lease, could not affect May L. Booth's interest in the lease, nor the interest of Wigle, and that the mere sale by Booth of her interest in the sheep did not affect the covenants in the lease.

(3.) The assignments did not operate to transfer the lease, and hence do not include or transfer the rights of Joseph Beezley and May L. Booth concerning advances under the lease, nor release them from the performance of their covenants therein. Nor would a payment by Wigle to said assignee extinguish the claim of said lessors for advances made in accordance therewith.

(4.) To enable the lessors to hold a lien upon Wigle's interest in the wool for advances, they must show that such advances were made to enable said Wigle " to perform the contract on his part, and not for a purpose wholly foreign to the lease."

(5.) That money delivered by Joseph Beezley to Wigle before said lease was made, for the purpose of enabling Wigle to purchase sheep in western Oregon is not an " advance" to Wigle within the terms of said lease, to enable him to perform the terms thereof on his part.

WASCO COUNTY. Defendants appeal. Reversed, and new trial ordered.

*Dufur & Dufur*, for Appellants.

*J. L. Storey*, for Respondent.

STRAHAN, J.—The plaintiff brings this action against the defendants, to recover damages for the wrongful and unlawful conversion of two thousand seven hundred and eighty-seven pounds of wool, of the value of $348.27, and eleven wool sacks of the value of $4.95.

The answer denies the material allegations of the complaint, and then alleges, in substance, that at the time of said alleged conversion said property was owned by one Wm. Wigle, who was indebted to the defendants White & Heisler in the sum of about $657.39; and that on the 24th day of April, 1885, they duly commenced an action in the circuit court of the state of Oregon for Wasco County against said Wigle, to recover the same; that they caused a writ of attachment to be duly issued in said action, and placed the same in the hands of the defendant Crossen, who was then sheriff of said county, for service; that said Crossen, as such sheriff, executed said writ by levying upon the property alleged to have been converted; that such proceedings were thereafter had in said action that the plaintiffs duly recovered a judgment against said Wigle for said sum of $657.39 and $83.39 costs; that execution duly issued on said judgment, and was delivered to the defendant Crossen as such sheriff, and that he duly applied said attached property on said execution, and that he sold the same by virtue of said execution at and for the sum of $348.35, and that this is the same conversion mentioned in complaint.

The reply denied the new matter contained in the answer. There was a trial, and judgment for plaintiff, from which this appeal is taken.

The rights of the parties to this action depend very much upon the proper construction of an agreement made between

one Joseph Beezley and Wm. Wigle and May L. Booth on the 1st day of October, 1883, which was offered in evidence by the plaintiff without objection.    The substance of so much of that agreement as is necessary to be noticed, is as follows: " That the said Joseph Beezley and May L. Booth hereby agree to deliver to William Wigle in said county of Wasco, on or before the 1st day of October, 1883, a certain band of sheep numbering about 1,400, being the same band heretofore in the possession of Joseph Beezley and May L. Booth, known as webfoot sheep ; and that said Wigle shall retain the posses- sion and management of the same for the term of three years from the date of delivery of same to him  *  *  *  said Wigle to keep and properly care for said sheep during said time.  *  *  *  He agrees that he will shear said sheep every year at such times as that the wool shorn from them may be delivered in the market by the first day of July of the same year ; and that he will, at his own expense, deliver all of the wool shorn from them at each shearing to the said Joseph Beezley and May L. Booth, at the Dalles, on or before the first day of July next after each shearing ; and he does further agree that should he at any time fail to perform any of the stipulations and terms hereinbefore stated and agreed to be performed by him, the said Joseph Beezley and May L. Booth shall have the right, at their option, to take all said sheep and their increase into their possession ; and all further right to their possession by the said William Wigle under this agree- ment shall be thereupon terminated  *  *  *  and the said Joseph Beezley and May L. Booth agree that each year, on the wool being delivered to them, as hereinbefore provided, they will, without unnecessary delay, sell the same at the best price they can obtain therefor, and after deducting from the entire proceeds any reasonable and necessary expenses of trans- portation, storage, insurance, commissions and the like, which they may have paid, they will pay over to the said William Wigle one half of the net proceeds, or remainder of such pro- ceeds, less any sum they may have advanced to the said Wil- liam Wigle or his order to enable him to perform this contract

on his part. It is mutually agreed that the title to said sheep and their increase shall be and remain vested in the said Joseph Beezley and May L. Booth until the end of the term of three years aforesaid, at which time there shall be returned to them out of said sheep and their increase a number equal to the number first delivered by them to the said William Wigle, of the same proportions in sex as nearly as may be; and the remainder of said sheep and their increase shall then be divided equally between the parties hereto, each taking as nearly as may be the same number as the other of each of the different classes, as to age and sex; the said Joseph Beezley and May L. Booth still retaining and having a lien upon the said sheep, going to said William Wigle upon each division for any advances made by them to said William Wigle which shall remain unpaid." There was evidence tending to prove that May L. Booth sold her interest in the *sheep* to Joseph Beezley.

Plaintiff's counsel then offered in evidence a bill of sale from Joseph Beezley to Alma C. Beezley, dated March 7th, 1885, whereby, in consideration of $14,525 then paid to said Joseph Beezley by Alma C. Beezley, he conveyed to her his interest in sundry bands of sheep in Wasco County, Oregon, including the Wigle band; all of which are fully described. The clause in the bill of sale which relates to the Wigle sheep is as follows: " And also all my right, title and interest in and to that certain band of sheep, numbering about one thousand head, now in the possession of William Wigle, near Ten Mile Creek, in said county and state." Habendum clause as follows : "To have and to hold the same, together with all the rents, issues and profits thereof, unto the said Alma C. Beezley, her executors, administrators and assigns, forever."

Plaintiff also, without objection, offered in evidence another bill of sale, dated March 18th, 1885, whereby, in consideration of $17,700, she conveyed to the plaintiffs all the property described in the first bill of sale, and in substantially the same words.

The property in controversy is Wm. Wigle's half of the wool for the year 1885, or his interest in it under the lease.

The first question requiring our attention is, whether or not he had such an interest in the wool produced from these sheep as would be subject to attachment by his creditors. And this depends upon the construction to be given to the lease. It must be conceded at once that no attaching creditor of Wigle's could acquire any other or greater interest in said wool than was possessed by Wigle himself.

By the terms of the lease, Wigle was to shear said sheep every year, at such times as that the wool shorn from them may be delivered in the market by the 1st day of July of the same year, and that he would at his own expense deliver all the wool shorn from them at each shearing to the said Joseph Beezley, and May L. Booth, at the Dalles, on or before July 1st, next after each shearing. Said Joseph Beezley and May L. Booth agreed on their part that on each year, on the wool being delivered to them, as thereinbefore provided, they would, without unnecessary delay, sell the same at the best price they could obtain therefor; and, after deducting from the entire proceeds any reasonable and necessary expenses of transportation, storage, insurance, commissions and the like, which they may have paid, they would pay over to the said William Wigle one half of the net proceeds, or remainder of such proceeds, less any sum they may have advanced to the said William Wigle, or his order, to enable him to perform this contract on his part.

The Supreme Court of California, in *Hewlett* v. *Owens*, 50 Cal. 474, held that under such a contract the lessor and lessee of the sheep became tenants in common of the wool, and the delivery of the wool is merely a step looking to a division to be had between them. It would follow, therefore, that Wigle had such an interest in the wool as was liable to seizure under an attachment. Of course, such seizure would have to be subject to the rights of Joseph Beezley and May L. Booth, under the terms of the lease. They are the source of Wigle's title to the wool, and he, and every person claiming under him with notice, must take his interest subject to and encumbered by the terms of the lease.

This statement of the case renders it necessary for us to de-

termine whether or not the plaintiff has succeeded to all the rights of Joseph Beezley and May L. Booth under the lease, and whether or not he is in a situation to assert the rights which they reserved to themselves by the terms thereof.

Whatever interest in the controversy or in the sheep the plaintiff has, is derived through the bill of sale from Joseph Beezley to Alma C. Beezley, and the bill of sale from Alma C. to the plaintiff. These writings do not purport, on their face, to assign the lease under which Wigle received the sheep in controversy, nor are they so worded as by any kind of construction or intendment they could legally operate to transfer the lease. They transfer the sheep, and if the habendum clause can be allowed to extend or enlarge the granting clause, which we doubt (3 Washb. on Real Prop. 374 ; *Manning* v. *Smith*, 6 Conn. 288), still that would only include the rents, issues and profits that were reserved to Joseph Beezley by the lease, and it could not affect May L. Booth's interest, nor the interest of William Wigle. It did not include or transfer Joseph Beezley's and May L. Booth's rights under the lease touching advances ; nor did it render the plaintiff liable to perform their covenants or agreements contained in the lease. To put the plaintiff in their shoes respecting the alleged advances, would require not only a regular assignment of the lease to him, but also an assignment of Joseph Beezley's account or demand for such advances ; so that when any money should be received by the plaintiff in payment of the advances, it would be at once applied to the discharge of the same. The money which the plaintiff seeks to recover in this action is on account of alleged advances made under the lease by Joseph Beezley to Wm. Wigle ; and yet the plaintiff shows no right whatever in himself to receive it. The purchase by plaintiff of Joseph Beezley's interest in the sheep, and of the rents, issues and profits thereof, did not operate to transfer to him Joseph's claim against Wigle for advances. And if the plaintiff should recover in this action, the reception of the money by him would not operate as a payment to Joseph Beezley upon his claim for · advances. His claim against William Wigle, on account of

those advances, would remain the same, without regard to the result of this action. The same may be said of May L. Booth's interest in the lease. The purchase of May L. Booth's interest did not, of itself, operate to assign or transfer to Joseph Beezley her interest in the lease, or relieve her from the performance of her covenants and agreements therein. It follows that the court erred in the admission of evidence, and in its charge to the jury on this subject.

But assuming that upon another trial the plaintiff may be able to prove regular assignments of the lease, and of Joseph Beezley's demand or claim for advances under the lease before this action was commenced, it may be proper to indicate our views as to the proper construction of that part of the lease relating to such advances.

The lease, after providing for the delivery of the wool to Joseph Beezley and May L. Booth, and the sale thereof at the best price that could be had, and for the making of sundry deductions on account of expenses, such as transportation, storage, insurance, and the like, provides that they should pay over to the said William Wigle one half of the net proceeds, or the remainder of such proceeds, less any sum they may have advanced to the said William Wigle or his order, *to enable him to perform this contract on his part.*

I think the evidence offered touching the item of indebtedness of $710 by Wigle to Joseph Beezley had no tendency whatever to prove that it was a sum advanced to Wigle, to enable him to perform the contract on his part. That was money which was given to Wigle to be used for purposes and in a way in no manner provided for or alluded to in the lease. The facts that Beezley gave Wigle money with directions to proceed to the Willamette Valley and there invest it in sheep, and that Wigle upon his return was short $710 and gave his note for it, are entirely foreign to the lease, and do not appear to be in any manner connected therewith. In any event, the writing is silent on the subject, and I think, to bring the claim within the description of advances that are contemplated by the lease, it ought to appear that they were made to enable

William Wigle to perform the contract on his part. In other words, it ought to be made to appear that it was to enable Wigle to perform some act, or to discharge some duty, which was enjoined upon him by the terms of the contract. This seems to be the rule which the contract itself prescribes for determining the question, and we only apply it to the facts as they appear. No doubt the parties might have made their contract more comprehensive in its terms; but here the rights of third parties have intervened, and we must give the contract effect according to the language which the parties have used. We have no right to enlarge its terms, so as to make it include matters that are excluded by the natural and fair import of the language, nor to embrace or include subjects which the words in the writing do not include.

The other advances which were referred to in the evidence, except the $710, seem to be within the terms of the contract; but they were more than discharged and paid by the item of $298, which Joseph Beezley received of Wigle, and for which credit is duly given.

I do not deem it necessary to enter into a more particular or minute discussion of the appellant's assignments of error. What has already been said disposes of the case.

The judgment is therefore reversed, and the cause remanded for a new trial.