[Filed February 11, 1888.]

J. F. BEEZLEY, RESPONDENT, *v.* J. B. CROSSEN ET AL., APPELLANTS.

PERSONAL PROPERTY—SALE OF, WHEN LEASED—EFFECT OF.—The sale of a band of sheep leased by the owner to W. does not *per se* transfer to the purchaser such lease, nor the right to any advances made by the lessor to the lessee. (Following *Beezley* v. *Crossen*, 14 Or. 473.)

EVIDENCE—WRITING.—Where the terms of a contract are in writing, oral evidence of what the parties thereto intended is not admissible.

ACTION FOR TORTIOUS TAKING OF PERSONAL PROPERTY—WHEN MAINTAINABLE.—Where a complaint counted on a tortious taking of personal property, and there was evidence tending to show that it was seized by the defendant O., who was a sheriff at the time, and that he so took it under a writ of attachment against the property of W., and that W. then owned a leviable interest in the same, *held*, that the taking was not tortious, and the complaint could not be upheld. *Held, also,* that an action for the interest of the respondent would arise only on a sale of his said interest by the person making the levy, when an action for the conversion thereof would lie.

APPEAL from Wasco County. Reversed.

*Atwater & Story,* and *A. S. Bennett,* for Respondent.

*E. B. Duffer,* for Appellants.

THAYER, J.—This appeal comes here from a judgment of the Circuit Court for the county of Wasco. The respondent commenced an action in that court to recover damages for the conversion of certain personal property. He alleged in his complaint "that on or about the fifteenth day of April, 1885,

the defendants therein, these appellants, wrongfully and unlaw-fully took from the plaintiff, this respondent, all the following described personal property of this plaintiff, and kept and retained the same, and have converted the same, and the whole thereof, to their own use." The property referred to is described in the complaint as 2,787 pounds of wool of the value of $348.37, and 11 wool sacks of the value of $4.95. The appellants denied in their answer the wrongful taking and con-version of the property, and justified their taking of it, under attachment proceedings had in an action in said Circuit Court wherein the appellants, White and Heisler, were plaintiffs, and one William Wigle was defendant. They alleged in their answer the regular issuance of the attachment, its delivery to the appellant Crossen, who was at that time sheriff of said county of Wasco, and that said Crossen, by virtue thereof as such sheriff, levied upon and took the said personal property, which said defendants alleged was the same taking mentioned in the complaint. The issue between the parties to the action was as to Wigle's ownership of the property, and of its being subject to the attachment.

The case was tried by jury, who returned a verdict for the respondent for the full value of the property. Judgment was entered thereon, and the appellants appealed therefrom to this court. The appeal was heard here, the judgment reversed, and the cause remanded for a new trial. A report of the case will be found in 14 Or. page 473, which contains the main facts. It was held by this court in that case that, according to the legal effect of certain writings there referred to, the wool in question, and other wool of which it constituted a part, belonged to Joseph Beezley and William Wigle as tenants in common, each of said parties owning a one-half interest therein, subject to a deduction from the gross proceeds of the sale thereof of certain advances made by Joseph Beezley to said Wigle, and that Wigle's interest therein was liable to attachment. It was also there held that the assignments from the successive parties to the respondent, of the right, title, and interest in the sheep, did not transfer to respondent the lease under which the sheep

were let to Wigle, nor the advances made by the lessors to Wigle under the lease; and that without proof of such assignment, the respondent could not avail himself of the benefit of the lease, or the claim of the lessors for the advances made under it. The case was remanded for a new trial, with the expectation upon the part of this court that the proof referred to would be supplied upon such trial. It appears, however, that it was not; that no proof of the assignment of the lease, or of the claim to the advances, was made any more than on the former trial. Evidence was given of the assignment of the interest in the sheep, and the respondent's counsel attempted to show that the parties to it understood that it included the lease and said advances; but the assignment being in writing, its terms could not be enlarged by parol proof of what the parties understood it to include. I have examined the testimony of the witnesses upon that subject, with a view of ascertaining whether any proof of such assignment was given, but have been unable to discover any. There was no attempt to prove it, except by Wigle and Joseph Beezley. The former intimated that he had received notice from the respondent of the transfer of the sheep, but finally concluded that he was not certain about that.

Joseph Beezley testified that respondent took the sheep under the same terms of the lease, and that he acted as agent for respondent in what he did after the assignment of the sheep. Such testimony was no proof of the fact of the assignment of the matters referred to. If Joseph Beezley assigned to the respondent the lease of the sheep to Wigle, and his claim against Wigle for his advances made under the lease, he could certainly have stated when and where the transaction took place, and the particulars concerning it. Proof of such a transaction should not be made by innuendoes, or left to conjecture. Joseph Beezley claiming to have acted as agent for respondent did not tend to prove such assignment. The affair was susceptible of direct proof, and it required that character of proof to establish it.

It would be presumed from the evidence in the case, as shown by the acts of the parties, that the assignment of the interest in the sheep to respondent was only colorable. Joseph Beezley

claims that he bought the interest of Mrs. Booth in the sheep in the fall of 1883; that they were transferred to his daughter, Alma C. Beezley, and that the latter, on the eighteenth day of March, 1885, transferred all of her right, title, and interest in them to the respondent. Under this last transfer, respondent claims his title. But it does not appear that he ever paid anything for the sheep, or took any interest in them. Wigle testified that he never saw him until after the action herein was commenced. Up to that time Wigle had had the sheep under the lease for nearly two years, during which time Joseph Beezley and Wigle seem to have had the whole management of the business. The former testified, it is true, that he was acting as agent for the respondent; but when the account was made up between him and Wigle, his agency disappeared. The advances claimed to have been made under the lease are all credited to Joseph Beezley as a principal, three items of which amounting to $1,130 appear as having been advanced by him over a month after the pretended transfer of the sheep to respondent. The account bears date May 2, 1875, one month and a half lacking one day after the transfer from Alma Beezley to respondent. Wigle testified that he made out the account at the request of Joseph Beezley, and that it was correct. If the respondent, when the transfer was made to him, became the owner of the lessors' interest in the lease, stepped, as it is claimed, into their shoes, became the owner of the advances made prior to that time, and made the subsequent advances himself, through his agent, Joseph Beezley, why was not the account made out in his name?

The case stands here, so far as I can see, just as it stood when here on the former appeal. There is not a particle of evidence more, showing that the respondent is the owner of the lease and of the advances than there was then, outside of the vague and equivocal statements made by the witnesses referred to, which will be found, upon examination, to contain no substance whatever. It is only by virtue of the ownership of the advances that the respondent is entitled to the interest in the wool claimed. Wigle owned the half interest attached, subject to the

payment of the advances, amounting in all to one hundred and seventy dollars, diminishing his interest therein that sum. The respondent was not in a condition to claim the benefit of the advances, without showing that they belonged to him. Slight proof of an assignment thereof to him would, under the circumstances, have been sufficient. The proof, however, should have been direct and certain, and not left to inference from general statements of conclusions. Any fact tending directly to prove it, such as a delivery over of the account to him by the owner, accompanied with a declaration of transfer, and intended as such, would doubtless have answered. But there is another difficulty in the way of the respondent's recovery in the action, if Wigle owned any interest whatever in the wool when the attachment was levied. The complaint, as will be seen, counts upon a tortious taking by the appellants, and it cannot be maintained, unless the respondent is able to prove his entire ownership in it; for whenever it is conceded that Wigle owned an interest in the wool, it disproves the alleged wrongful taking. The respondent had the right to attach Wigle's interest in the wool, however small it might be.

The respondent has no ground of complaint, except for a wrongful conversion of his interest in the property, which would arise only when a sale of it was made. Wigle having had a leviable interest in it would justify the taking of the wool and sale of such interest, and the respondent has no right of action, except for a sale of the excess belonging to him. If, therefore, he made the proof in question, he could not recover upon his present complaint, he will have to count on a conversion as suggested. This would involve the necessity of amending the complaint, which I am inclined to think, under the circumstances of the case at this stage of the proceedings, should not be permitted.

The judgment must therefore be reversed, and the cause remanded to the court below, with directions to dismiss the complaint without prejudice.