WETZEL v. DESERET NAT. BANK et al.; AJAX, Intervener.

No. 1679.   Decided November 27, 1905 (83 Pac. 570).

BAILMENT—LEASE OF SHEEP—RIGHT OF MORTGAGEE.—A contract or lease of a certain number of sheep for a certain time, providing for payment of a certain amount of wool per head and a fixed increase per one hundred head, stipulating for the payment of taxes and branding, and requiring their return at the expiration of the lease, unless it is renewed, is a bailment and not a sale; and hence a mortgage by the lessee, without the lessor's knowledge, was invalid, and conferred no right of disposition by the mortgagee.

APPEAL from District Court, Second District, H. H. Rolapp, Judge.

Action of replevin by W. A. Wetzel against the Deseret National Bank and others.   Emil Ajax intervened.   From a judgment for plaintiff and intervener, defendants appeal.

AFFIRMED.

*Young & Moyle* for appellants.

*Harrington & Sanford* for respondent.

"Replevin will not lie for money unless it is marked or designated in such a manner that it may be identified, and the same is true of any property to be replevined,—the plaintiff must identify the specific property as his own." (*Low v. Martin,* 18 Ill. 286; *Stanley v. Robinson,* 14 Ill. App. 480; *Hart v. Fitzgerald,* 2 Mass. 509; *Scudder v. Worster,* 11 Cush. [Mass.] 579; *Welch v. Smith,* 45 Calif. 230; *Dole v. Olmstead,* 36 Ill. 150; *Dole v. Olmstead,* 41 Ill. 344; *Bailey v. Bensley,* 87 Ill. 556.)

"When the identical thing delivered is to be restored though in an altered form, the contract is one of bailment, and the title to the property is not changed; but when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, he becomes a debtor to make the return, and the title to the property is changed—it is a sale." (*Hurd v. West,* 7 Cowen 752; *Newton v. Woodruff,* 2 Comstock 153; *Ewing v. French,* 1 Blackfoot 353; *Chase v. Washburn,* 1 Ohio St. Rep. 244; *McKay v. Hamblin,* 40 Minn. 472; Story on Bailments, Secs. 37, 415; Schouler on Personal Property, Secs. 38, 39; *Lonergan v. Stewart,* 55 Ill. 44; *Foster v. Pittibone,* 7 N. Y. 433; *Brown v. Hitchcock,* 28 Vt. 542; *Smith v. Clark,* 21 Wendell 83, 34 Am. Dec. 213; *Norton v. Woodruff,* 2 N. Y. 153; *Mallory v. Willis,* 4 N. Y. 77.)

The first point argued is that we have not identified the sheep taken, as our sheep, therefore we must fail. The undisputed evidence shows that we turned over to Kirk a herd of sheep; that up to the time Kirk took our sheep he was working as a herder for his brother and had no sheep; that he took our sheep under a lease, not sale, and that he continued in possession of the identical herd.

Under these facts and under our complaint and affidavit, we were entitled to replevin. (*Turnbow v. Beckstead,* 71 Pac. 1062; *Lawrence v. Coyne,* 62 Cal. 124; *Eldred v. Oconto Co.,* 33 Wis. 133; *Shinn on Replevin,* sec. 11; *Brewster v. Carmichael,* 39 Wis. 456.)

The rule now is that "customs of trade and understand-

ings of parties make it that when grain is deposited in a warehouse and it is not contemplated that the depository shall return the identical grain, but only an equal amount of the same grade and kind, it is a bailment." (3 Ency. of Law (2 Ed.), 737; Schouler on Bailments, sec. 8; Van Zile on Bailments and Carriers, sec. 24; *Sexton & Abbott v. Graham,* 53 Iowa 181.)

We consider this question already settled by our Supreme Court in the cases of *Woodward v. Edmonds,* 20 Utah 118, 57 Pac. 848, and *Turnbow v. Beckstead,* 25 Utah —, 71 Pac. 1062.

Also, the rule now is that grain which is confused may be replevined. (*Young v. Myles,* 20 Wis. 615; 20 Ency of Law, 1064, notes; *Turnbow v. Beckstead,* 71 Pac. 1062.)

BARTCH, C. J.

This was an action of replevin to obtain possession of a certain number of sheep or judgment for their value in case delivery could not be had. It appears from the evidence that the plaintiff, his wife, Robert Cowan, and Mrs. Mary E. F. Hayes, owners of a herd of sheep, leased the same to the defendant Robert Kirk in September, 1900, for the term of one year. At the expiration of the year, on September 27, 1901, the owners, Wetzel and wife and Mrs. Hayes, again leased their sheep, in all about 2,722 head, on similar terms, to Robert Kirk for another year. This lease, so far as material to this decision, reads: "The second party agrees to pay one and one-half pounds of wool if said wool sells for eight cents per pound, and one and three-fourths pounds if said wool sells for ten cents per pound, and two pounds per head if the said wool sells for twelve cents per pound, and ten lambs to the one hundred sheep let wool sell at any of the above prices. The party of the second part also agrees to pay the taxes and all other assessments pertaining to said sheep, and will earmark and wool brand them at the proper time, and watch over them in a herdsmanslike manner, and keep said sheep as free from scab as possible. The party of the second part agrees that at the expiration of this lease, if the parties of the first part demand said sheep, through failure of said second party to keep the agreement, he will return to the first parties the proper amount of lambs, ewes and wethers to form a good stock herd of sheep, with the follow-

ing earmarks: Crop and slit in right ear, and under bit in same, and upper slope off left ear, and swallow fork and round under bit in right ear, and crop off left ear. Swallow fork and round under bit in right ear, and crop and upper slope off left ear, and crop and slit and under bit in right ear, upper slope off and nick in left ear. The party of the second part agrees to pay the proceeds from sale of said wool as soon as possible after the sale of said wool at the residence of W. A. Wetzel. The party of the second part will have the right to sell some sheep, but not enough to impoverish or make a poor herd of sheep, and will improve the quality of said sheep as much as possible. Any violation of this lease makes it null and void, and the first parties can take the sheep into their possession, if they so desire. This lease can be renewed at the end of the term if all parties so desire. The second party shall give thirty days' notice if he desires to release or give up possession of said sheep. He will also keep the parties informed how he is getting along with said sheep." On August 2, 1902, and while this lease was yet in force, the lessee borrowed from the defendant bank the sum of $2,500, and to secure the loan, executed, without the knowledge or consent of the lessors, a chattel mortgage on the herd of sheep, representing to the bank that he was the owner of them. At the expiration of this lease on September 25, 1902, another lease was made to Kirk, for the term of one year, in which the lessee was not required to pay any increase. The note secured by the mortgage was due on July 2, 1905, but at that time, it appears, the lessee had left the herd in the charge of herders, and his whereabouts have since been unknown. In September, 1903, the mortgagee seized the sheep and sold them under the terms of the mortgage. Thereupon this suit was instituted. At the trial the plaintiff recovered judgment against the bank for $2,562.92, and interest, the intervener for $67.26, and interest, and the defendant bank recovered judgment against defendant Robert Kirk for $2,500 and interest. Afterwards the bank and defendant Ajax appealed from the judgment entered in favor of the plaintiff.

The decisive question on this appeal is whether the transactions between the lessors and lessee constituted a sale or a bailment. Appellants contend that they amounted to a sale, while

respondent insists there was but a bailment. Upon examination of the written lease in evidence, it will be noticed that neither of the instruments contains any words of sale—no language showing a transfer of title, nor any provision requiring payment for the property. On the contrary, the language employed in the instruments shows that the lessee was to keep the sheep branded and marked with marks designated in the leases, and at the expiration of each term to return the sheep so marked, unless the lease would be renewed for another year. This, of course, did not mean that the lessee was bound to return all of the identical sheep, but that he must return the proper number out of the herd leased, including the increase. The mere fact that the lessee, under the terms of the instrument in force at the time of the execution of the mortgage, was to pay wool and increase of lambs, does not make the transaction a sale, nor does the fact that the the lessee was authorized to "sell some sheep, but not enough to impoverish" the herd, effect such result. In each of the instruments the evident intention of the parties was to effect a lease of the sheep and not a sale. This is apparent not only from the context, but also from the acts of the parties as shown in evidence. Both parties treated each transaction as a lease, except in the single instance when the lessee falsely treated it otherwise, and wrongfully executed the mortgage. That he, at that time, was fully aware that he was acting unlawfully and without authority, is evident by his subsequent conduct, in leaving the sheep, contrary to the requirements of his contract with the owners, in the hands of herders, without continuing to give them his personal attention. Instead of complying with his agreement in this regard, he abandoned the herd and left the country without notice to his lessors, and without attempting to maintain any right to the sheep. Leases of this character have been before this court on several occasions, and have uniformly been held to be contracts of bailment and not of sale. (*Woodward v. Edmonds,* 20 Utah 118, 57 Pac. 848; *Turnbow v. Beckstead,* 25 Utah 468, 71 Pac. 1062.

It follows that the contract under which the defendant Kirk had possession of the sheep at the time of the execution of the mortgage being but a lease, he had no legal right to dispose of the herd either by mortgage or otherwise, and that

the mortgage, upon which the appellants rely, was, under the facts and circumstances disclosed in evidence, invalid, and conferred no right of disposition of the sheep by sale upon the mortgagee. Such being the case, the decree and judgment must be sustained. Having arrived at this conclusion, it is not deemed important to discuss any other question presented.

The judgment appealed from is affirmed, with costs.

McCARTY and STRAUP, JJ., concur.