MANTI CITY SAVINGS BANK v. PETERSON et al.

| 30 | 475 |
| s33 | 215 |
| s33 | 217 |

No. 1745. Decided July 19, 1906 (86 Pac. 414).

1. REPLEVIN—COMPLAINT—SUFFICIENCY—ALLEGATION AS TO OWNERSHIP.—In a suit to recover personal property, the complaint must show that plaintiff was the owner or entitled to possession of the property at the time of the commencement of the action, and it is not sufficient to aver that he was the owner and entitled to possession on the day preceding the filing of the complaint.

2. CHATTEL MORTGAGES—POSSESSION BY MORTGAGEE—ACTION—EVIDENCE.—In an action by a chattel mortgagee to recover certain sheep under a provision in the mortgage giving him the right to take possession of the property on default in payments, evidence examined, and *held* sufficient to show that the mortgagor owned the sheep at the time of the execution of the mortgage and to identify the property therein described.

3. SALES—BAILMENT DISTINGUISHED.—A lease of sheep under an agreement that they shall be branded with the lessee's mark, and commingled with sheep of his own having the same mark, the lessors to be paid so much wool per sheep and a certain rate of increase each year, is a bailment and not a sale.[1]

Action by the Manti City Savings Bank against Niels Peterson and others. Judgment for plaintiff, and defendants appeal.

APPEAL from District Court, San Pete County; F. Erickson, Judge.

REVERSED.

*J. M. Cherry, Ephraim Hansen,* and *Jos. L. Rawlins* for appellants.

*W. D. Livingston* and *Arthur Brown* for respondent.

STRAUP, J.

1. The respondent, plaintiff below, brought this action against defendants to recover the possession of sheep. Upon findings made by the trial court, judgment was rendered in favor of plaintiff. The first assignment of errors assails the sufficiency of the complaint. It was alleged in the complaint "that the plaintiff on the 2d day of September, 1903, was entitled to the possession" of the sheep; that on that day a demand for the possession was made by the plaintiff, but the defendants refused to deliver. The complaint was filed September 3, 1903. The defendants' demurrer to the complaint for want of facts, and their objection on the same ground to the introduction of evidence, were overruled. It is contended that the complaint is insufficient because it does not allege that the plaintiff was the owner or entitled to the possession of the property at the time the action was commenced. The contention must be sustained.

---

[1] Wetzel v. Deseret Bank et al., 30 Utah 62, 83 Pac. 570; Turnbow v. Beckstead, 25 Utah 468, 71 Pac. 1062; Rich v. Bank, 30 Utah 334, 84 Pac. 1105.

In a suit to recover personal property the complaint must show the ultimate fact that the plaintiff was the owner or entitled to the possession at the time of the commencement of the action; and it is not sufficient to merely aver that he was the owner or entitled to possession at some period prior to that time. (*Fredericks v. Tracy,* 98 Cal. 658, 33 Pac. 750; *Affierbach v. McGovern,* 79 Cal. 269, 21 Pac. 837; *Masterson v. Clark,* [Cal.], 41 Pac. 796; *Holly v. Heiskell,* 112 Cal. 174, 44 Pac. 466; *Kimball Co. v. Redfield,* 33 Or. 292, 54 Pac. 216; Cobbey on Replevin, sections 97, 98.) This principle of law is not disputed by the respondent, but it is claimed that the allegation of right to possession on the 2d day of September, the complaint having been filed on the 3d, is a sufficient allegation, and equivalent to the one that the plaintiff was entitled to the possession at the commencement of the action. This claim is answered, adversely to the respondent, by the court in *Fredericks v. Tracy,* where, in speaking of the difference between that case and the case of *Afflerbach v. McGovern,* it said:

"The alleged ownership and right of possession in that case was long before the suit brought, while here it is placed at a date only two days prior to the commencement of the action; but this does not alter the principle, which is that the plaintiff must show his ownership and right to possession at the time the action is commenced."

No such averment having been made, the court erred in overruling the demurrer and objection.

2. Inasmuch as the case must be remanded for a new trial, and that other points presented may again be raised on retrial, it is proper that we express our opinion on them. It is urged that the defendants' motion for nonsuit ought to have been granted. That claim is made, principally, on the ground that the property was not sufficiently identified, and that the plaintiff had not shown ownership nor right to possession of the property. In December, 1902, one Peter Thompson, to secure an indebtedness, gave the plaintiff a chattel mortgage on 1600 head of sheep, and their increase marked "with two upper bits in the left ear, and an upper bit in the right ear, branded with 'T' on the back." By a provision in the mort-

gage, on default of payments, the plaintiff was given the right
to take the property into his possession. Such default was
made August 1, 1903. At about that time the mortgagor died
at his sheep camp, and in the possession of about 2,900 head
of sheep, of which about 2,163 head were marked and brand-
ed as in the mortgage described. After the death of the mort-
gagor, and on August 2d, or 3d, the plaintiff engaged a person
who was acquainted with the deceased's sheep, to go to the
camp and see "if everything was all right." On his arrival
at the camp he found the sheep in charge of two men and
boys. He hired one of them to look after the sheep until the
plaintiff made other arrangements. On the 4th or 5th of
August another person was employed by plaintiff to take the
sheep with Peter Thompson's mark on them, and as described
in the mortgage. In his effort to do so the person in charge
refused to let him have them. Thereafter the sheep so mark-
ed were taken by the plaintiff on its writ. It was also shown
that such mark was Peter Thompson's mark, and that for a
number of years prior to his death he was in the sheep busi-
ness, and each year had in his possession upwards of 2,000
sheep marked as in the mortgage described. The note and
mortgage, of course, were admitted in evidence and proof
made of nonpayment and default. We think this evidence,
*prima facie*, at least, tended to show that the deceased was the
owner of the sheep at the time of the execution of the mort-
gage, and sufficiently identified the property described in the
mortgage. The court, therefore, properly overruled the mo-
tion.

3. That defendants introduced evidence tending to show
that prior to the execution of the mortgage they had leased
sheep to Peter Thompson, and which were of the herd mort-
gaged by him to the plaintiff. Neils Thompson, one of the
defendants, testified: "I am a brother of Peter Thompson.
I was acquainted with the band of sheep in Peter Thompson's
possession in 1902. I had 915 head of sheep in that band in
in 1902. I first delivered him something over 100 head in
1896, upon the terms that he was to run them and give me
ten per cent. increase and one and one-quarter pounds of wool

per head per year, and at the end of the year return my sheep or renew the contract. The next year I left the increase and added more sheep and renewed the contract. In 1897 I had 266 head. I renewed the contract each year. In 1898 I had 292 head. In 1899 I bought 100 head from C. J. Fisher and added to my contract, making 421 altogether. In 1900 I bought more sheep and turned them in, making a total of 751. In 1901 I had 832, and in 1902 I had 915 head in the herd on those terms. I had no written contract. We settled up at the end of each year, and Peter Thompson acknowledged the number. In September, 1903, I had, with the increase added, 1006 sheep in his herd belonging to me. The sheep were marked with Peter Thompson's mark. I consented to them being marked that way. I settled with Peter Thompson in 1902, and we agreed on 915 head, and the contract was renewed for another year upon the same terms."

In connection with the testimony of other defendants with respect to their having leased sheep to Peter Thompson, the following memoranda, executed by him, were admitted in evidence:

"Ephriam, Utah, October 1, 1901.

"This certifies that I have 489 2-10 sheep on shares belonging to Albert Thompson, for which I agree to pay one and one-half pounds of wool and ten sheep increase per hundred, the sheep when delivered to be at or near Ephriam, and to be an average of my herd.        Peter Thompson."

"Ephraim, Utah, October 1, 1901.

"This certifies that I have leased and received of C. J. Fisher, of Ephraim, Utah, 387 head of stock sheep for one year, and agree to pay to said C. J. Fisher ten head of sheep increase on each one hundred, also one and one-half pounds of wool on each head for the lease and use of said sheep. The said 387 sheep, together with the ten on each one hundred increase, when returned to said C. J. Fisher, to be an average of all the sheep in my herd, and to be received by him or delivered to him within thirty miles of Ephraim, Utah, on October 1, 1902. The said sheep to be separated from my herd

in the presence of said C. J. Fisher, or representatives duly authorized by him to receive them.

PETER THOMPSON."

Similar evidence of other defendants was also admitted. Book entries made by the deceased and in his handwriting, showing accounts and transactions between him and the defendants, with respect to the leasing of sheep, were also admitted. The defendants testified that the sheep leased by them to the deceased were marked with Peter Thompson's mark with their consent; that it was the custom to mark leased sheep with the lessee's mark; and that they were marked in that way so they could be identified. After the testimony of the defendants with respect to their having leased sheep to the deceased, and of their ownership, had been received, on plaintiff's motion, the court ruled it out. In this ruling we think the court erred. The respondent seeks principally to uphold the ruling because of the fact that the defendants' sheep, with the consent of the parties, were marked with Peter Thompson's mark, and were commingled with sheep of his own having the same mark, and that, therefore, the sheep claimed to have been leased by the defendants could not be distinguished from the sheep owned by the deceased, and from the nature of the contracts the identical sheep leased were not to be returned to them; and therefore, the transactions must be regarded as sales or another passing of title, and not as bailments or as creating a tenancy in common. Under the holdings of this court the claim is not tenable. (*Wetzel v. Deseret Bank et al.*, 30 Utah 62, 83 Pac. 570; *Turnbow v. Beckstead*, 25 Utah 468, 71 Pac. 1062; *Rich v. Bank*, 30 Utah 334, 84 Pac. 1105.) The court should not have stricken the testimony, but should have considered it and made findings with respect thereto.

The judgment of the court below is reversed, plaintiff given leave to amend its complaint, and a new trial granted. Costs of the appeal are to be taxed against the respondent.

McCARTY, J., concurs.  BARTCH, C. J., concurs in the judgment.