(No. 5004.   November 16, 1928.)

ALICE MAHONEY, Respondent, v. CITIZEN'S NA-
TIONAL BANK OF SALMON, IDAHO, Appellant.

[271 Pac. 935.]

E. H. Casterlin, for Appellant.

L. E. Glennon, for Respondent.

HARTSON, District Judge.—The respondent, plaintiff below, filed complaint against Ray Mahoney, Jane Hammond, Citizen's National Bank and Southeastern Idaho Livestock Company to foreclose a chattel mortgage on cattle. The mortgage was given respondent in October, 1921, by Ray Mahoney, to secure a note for $1,000. Some time after suit began, a supplemental complaint was filed alleging that about the time of commencement of the action, or subsequently, the exact time being to her unknown, the Citizen's National Bank (hereinafter called the Bank) converted the mortgaged cattle, and praying judgment for their return or the value to the extent of the debt. Respondent dismissed as to all except the Bank. The action was tried with jury and submitted by both parties on the theory of conversion. The court submitted four interrogatories, and a general verdict; the latter was for respondent in the sum of $1,575.66, being the sum of the debt, interest and attorney's fees. The interrogatories were all answered in respondent's favor. The Bank appeals from the judgment.

It appears that in September, 1920, Mahoney and one Craig "leased" from Hammond certain cattle and other property. Lessees were to have one-half the increase. All increase were branded 'H.' The original cattle were branded quarter circle 'H.' In February, 1921, Mahoney purchased Craig's interest. In March, he gave respondent

the note, and in October the chattel mortgage. This covered all his right, title and interest in the increase for 1920–21. In July, 1922, Mahoney and Hammond agreed in writing whereby the latter purchased all the former's interests under the lease, including the increase, and all the cattle, including 244 head of 'H' brands, were turned back to her. The agreement expressly provided that Hammond would pay respondent's claim evidenced by the note and mortgage, and would assume all Mahoney's obligations thereunder. There is evidence that respondent knew of this agreement and assented thereto, but it does not appear that she relinquished her mortgage lien. She did not cancel or release it of record, and the jury found that she neither expressly nor impliedly consented to such release, nor accepted in lieu thereof the personal obligation of Hammond. When the cattle were delivered to the latter, she paid respondent accrued interest on the note, but failed to pay the mortgage debt.

After the return of the cattle to Hammond, she sold the steers from the 1921 crop, and the proceeds went to appellant Bank. From time to time while the cattle were in Mahoney's possession, and after their return to Hammond, the latter borrowed sums from the Bank, and gave as security chattel mortgages covering quarter circle 'H' brand cattle and any other cattle owned by her, but 'H' brands were not expressly included. At least as early as when Mahoney relinquished his lease the Bank knew of respondent's mortgage, and in March, 1925, when it seized all Hammond's cattle under its mortgage, it was informed that respondent held a mortgage on the 'H' brands, and was advised not to bother them. But it failed to desist and took the cattle, including "over one hundred head" of 'H' brands, sold them at $26 per head, and applied the proceeds on the Hammond notes. Thus appellant received the proceeds from all of the 'H' brands, although this suit, brought in 1925, concerns only the alleged conversion of the remaining 100 or more head. It is not claimed that the Bank's

mortgages were superior in time or record to that of respondent.

Appellant assigns as error the insufficiency of the evidence to support the judgment. The increase were never divided so as to distinquish the part belonging to Mahoney from that belonging to Hammond, or that of 1920–21 from that of 1922.

Appellant advances the ingenious theory that, since the 244 'H' brands turned back in July, 1922, were the increase for 1920–21 and 1922, and if calves are assumed to have been dropped at the same rate per day, only 173 head at most were dropped in 1920–21; that, while there is no evidence thereof, it is reasonable to assume that half of the calves were steers, all of which for 1921 were sold by Hammond prior to the alleged conversion; that there would remain, out of 173 head, only 86½ head, one-half of which, or 44 head, belonged to Mahoney; that at $26 per head, the value of the property converted was only $1,144; or if there were two practically equal calf crops, due to the fact that the calf crop from range cows comes in the spring, the value would only be $832.

Again, by the same reasoning, Jane Hammond owned, at the time of the conversion, exclusive of respondent's mortgage interest, 43 head of 1920–21 increase, and 71 head of 1922 increase, or 114 head, exclusive of steers sold, or more than enough to make up the number taken by appellant.

On the other hand, it is respondent's theory that the Bank actually converted the entire interest in the 'H' brands, being "over one hundred head," which, at $26 per head, would be at least $2,600 for the property converted.

Neither theory applies in our opinion, due apparently to failure to recognize the real nature of the mortgaged interest. A term lease of livestock providing for their return to the owner and a division of the increase between the parties is a bailment. (*Robinson v. Haas,* 40 Cal. 474; *Beezley v. Crossen,* 16 Or. 72, 17 Pac. 577; *Woodward v. Edmunds,* 20 Utah, 118, 57 Pac. 848; *Turnbow v. Beckstead* 25 Utah, 468, 71 Pac. 1062; *Wetzel v. Deseret*

*Nat. Bank,* 30 Utah, 62, 83 Pac. 570; *Rich v. Utah Commercial & Sav. Bank,* 30 Utah, 334, 84 Pac. 1105; *Manti City Sav. Bank v. Peterson,* 30 Utah, 475, 116 Am. St. 862, 86 Pac. 414.) The lessor and lessee became tenants in common of the increase, share and share alike, and of each head thereof. (*Sheldon v. Skinner,* 4 Wend. (N. Y.) 527, 21 Am. Dec. 161; *Willard v. Wing,* 70 Vt. 123, 67 Am. St. 657, 39 Atl. 632; 7 R. C. L., sec. 9, p. 816; Bowers' Law of Conversion, sec. 221.) The lessee's share interest in the common property was subject to mortgage and the mortgage would carry the part allotted to him in any partition subsequently made. (7 R. C. L., sec. 80, p. 885; *Forman v. Proctor,* 9 B. Mon. (Ky.) 124.)

Respondent's mortgage expressly covered Mahoney's interest in the 1920–21 increase, but the 1920–21 increase were so intermingled with that of 1922 as to be incapable of identification. The lien of the mortgage, under the doctrine of confusion, then attached to Mahoney's interest in the whole increase. (Child's Personal Property, sec. 287; Bowers' Law of Conversion, secs. 271, 272; *Manti City Sav. Bank v. Peterson,* 33 Utah, 209, 126 Am. St. 817, 93 Pac. 566.) This was the situation in 1925 when appellant took the cattle from Hammond. The mortgaged interest being severable from the lot, respondent may maintain trover as to that share of the intermixed cattle. (*Manti City Sav. Bank v. Peterson, supra;* Jones on Chattel Mortgages, sec. 490; Bowers' Law of Conversion, sec. 128.) But the mortgaged share of the cattle taken, at $26 per head, does not exceed $1,300, which is insufficient to support the damages awarded. (*O'Neil Implement Mfg. Co. v. Gordon* (Mo. App.), 269 S. W. 636; Bowers' Law of Conversion, sec. 681.)

It was stipulated without objection or reservation that appellant sold the cattle for $26 per head. Appellant now contends that this is insufficient to fix the value of the property at the time of conversion. The exact time of the sale by appellant is not shown, but it took the cattle March 23, 1925, and obtained a deficiency judgment against Ham-

mond on July 7th of the same year. The sale must therefore have intervened these two dates. The only purpose of the stipulation was to show value at the time of conversion. We think it sufficient.

██ It is urged that the description in the mortgage is insufficient under decisions holding that a mortgage of part of a larger number of stock which does not separate or distinguish the stock mortgaged, is void for uncertainty, particularly as to third persons. What we have said as to the nature of the mortgagee's interest we think disposes of this contention. Respondent's mortgage does not describe a particular part of a larger number, but does describe an undivided interest in the lot. (11 C. J. 470.) There is no indefiniteness in the description of the lot, because it is all 'H' brand. The rule suggested, in any event, does not apply as to claimants with actual notice that the property is covered by the mortgage. (11 C. J. 463.)

██ Error is also predicated upon the giving of instruction No. 10, which states as the measure of damages the value of the 1920–21 increase to the extent of the debt. This was error for the reasons hereinbefore stated.

The jury compensated respondent in a sum exceeding her interest in the property. Her interest, however, is readily computable upon the basis of an undivided half interest in 100 'H' brands at $26 per head, or $1,300. We have concluded, therefore, that the judgment is excessive; that it should be and is hereby reduced to $1,300, and is affirmed in that sum. Costs of the appeal are awarded to appellant.

Wm. E. Lee, C. J., and Givens and Taylor, JJ., concur.

Petition for rehearing denied.