[Civ. No. 4425. Third Appellate District.—February 18, 1932.]

ALBERT JAMES, Respondent, v. ALFRED KUHN, Appellant.

Herbert W. Whitten and Ware & Ware for Appellant.

Jerome D. Peters for Respondent.

PARKER, J., *pro tem.*—The action was to recover a balance claimed due to plaintiff from defendant pursuant to the terms of a written contract, of which hereinafter. The proceeding became really one of accounting and after trial the court below awarded judgment in favor of plaintiff and against defendant in the sum of $385.42. The defendant appeals.

On the twenty-first day of December, 1928, plaintiff and defendant entered into an agreement in writing, terms of which follow. Kuhn, being the owner of 900 head of ewe sheep, ranging in age from two to seven years, leased the band to James to be run on shares. James agreed to feed and to pay all expenses pertaining to the running, with the exception of one-third the grain and one-half of the shearing expenses until such time as Kuhn might think it advisable to sell to the best advantage of all concerned. In

consideration of this obligation of James, Kuhn agreed to give James an equal one-half of the amount received after the lambs, wool and sheep were sold over and above the amount of $8,867.50, the price of the sheep. The agreement then reads as follows:

"It is distinctly understood that party of the first part (Kuhn) has the selling of all sheep and wool, in other words, all money taken in from the sale of the lambs and wool if they are sold separate is to first be turned in against the cost price, and all over the $8,867.50 is to be divided equally between first and second parties."

For the purposes of the present discussion it may be stated that the general plan was carried out. The trial court having before it the items of expense claimed and receipts taken cast the account as indicated in its judgment. As might be expected, the record reflects receipt and expenditures and the balance reached seems to be supported by sufficient evidence as to all of the items involved with the exception to be hereinafter noted. While appellant has urged some more or less general objections to certain items allowed and certain claimed credits rejected these objections are deemed without merit in so far as the conclusions are, in the main, adequately supported.

The appeal presents but one question for determination and involves an amount claimed by appellant as a credit and disallowed by the court, which is in itself sufficient to wipe out the amount of the judgment. In the month of June, 1929, Kuhn had remaining the original band of ewes. At that time he sold the ewes to one Hunt under a contract of sale, the terms of which, as far as necessary to detail here, were as follows: Hunt purchased the ewes, 900 in number, at the rate of $8 per head for 850 head; the remaining 50 head were lumped off at a price of $4 per head for 40 and the remaining 10 thrown in for good measure. However, when the sheep were actually delivered there were but 730 of the class rated at $8 and 40 at the $4 price. No point is made here as to the deficiency, the record indicating that this apparent loss has been accounted for in the settlement. The gross price in cash, therefore, would be $6,072. Here it is to be noted that the full cash price was not received or to be received on delivery. Kuhn was to receive approximately $2,300 in cash and an assignment

of a secured note in the amount of $1600, leaving due and unpaid a balance approximating $2,000. Balance of money was to be paid from lambs and wool produced by the flock, and the payment secured by mortgage on sheep.

The agreement with Hunt further provided as follows: "Kuhn to contract wool from above mentioned sheep at twenty-five cents per pound for both fall and spring clips." It thereafter developed that the fall and spring wool was of a market value far less than twenty-five cents per pound and the result was that Kuhn paid for the wool contracted the sum of $1670.25 and sold the same, at the market, for the sum of $802.40, resulting in a loss to him of $867.84.

Appellant contends that in taking an account between the parties the transaction of the sale of the sheep should be considered in its entirety; in other words, that he should be charged with the receipt of the final sum realized rather than the straight sum of $8 per head. If that contention is upheld the result would be almost to balance the account or there would be a small amount due appellant.

In approaching a solution of the question presented we make some general observations. An action in accounting is equitable in its nature and governed largely by the principles of equity. The property in question was personal property of a character likely to fluctuate in value, likely to perish and certain to age. And the aging process, in ewes, decreases the value and lessens the fecundity.

Courts will take judicial knowledge of contemporaneous events of general knowledge and repute. It would be somewhat of a confession of ignorance if we should decline to consider that during 1929 and 1930 the nation at large was going either through or into an economical adjustment wherein values were becoming uncertain and all business conditions unsettled. The relationship between the parties here may not readily be brought within any distinct classification. It lacked some essential features of a partnership and likewise were some of the characteristics of a joint venture absent. Taken as a whole, the interest of James in the flock was that the sale of sheep furnished the means and measure of his compensation under an agreement of service. On the other hand, he might be deemed to have an ownership in the sheep with the control and power of sale in Kuhn. Respondent insists that the power of sale,

however, was limited to a sale for cash. Yet if a cash sale had been made for five cents per head respondent would not agree that the sale could not be scrutinized. The obvious conclusion is that this power of sale implied a fair sale to be conducted in good faith and in the exercise of sound judgment.

The testimony is that the actual market value of the sheep at the time of sale was between six and seven dollars per head, excluding those deemed worthless and that the wool agreed to be purchased for twenty-five cents per pound was then of a market value of approximately eighteen cents. The testimony further showed that the sale could have been made under no other conditions. The purpose of running sheep is, naturally, to derive profit and this profit can only be realized through the increase and the wool. The purchaser, Hunt, was unwilling to venture into the sheep business without some assurance or guarantee of the coming market. If Kuhn had kept the sheep and foregone the opportunity of sale it would have necessitated further arrangements for the feed and upkeep of the herd and the usual expectation of the normal loss. To keep them indefinitely would destroy the chance of anyone ever realizing anything.

We conclude that the arrangement made was in the exercise of sound business judgment and inured to the benefit of all concerned and was an inseparable part of the transaction of sale. There is not a suggestion of fraud or unfairness in the entire record.

Viewing the controversy from another angle, the sheep were of a value of not to exceed $7 per head—that is the uncontradicted record. If, by reason of the agreement to repurchase the clip at a set price, a higher figure was received for the sheep, the respondent James can hardly claim the benefit without assuming the burden. The limit of plaintiff James' right was to a fair and just accounting. If Kuhn had given the sheep away or ruthlessly destroyed them the basis of James' claim would be the reasonable value of the sheep. And so here, if an improvident or unwise sale had been concluded by Kuhn the basis of James' remedy would be the same. In no event could the latter approve the arrangement only in so far as he might be benefited and

repudiate the remainder. We are confining our conclusions to the instant case.

We hold that the court below should recast the account, charge Kuhn with the net amount actually received from the sale to Hunt, including in the computation the transaction with respect to the contract to purchase the clip and the profit or loss resulting therefrom. The transaction between the parties here to the relationship is purely contractual and presents phases of partnership, joint venture, agency and bailment. A characterization apt in every sense seems impossible; yet that should be no barrier to a fair adjudication of the respective rights.

The judgment is reversed.

Plummer, J., and Preston, P. J., concurred.