40 So.2d 879

### HOLLIS v. BENDER.

#### 4 Div. 492.

Supreme Court of Alabama.

May 26, 1949.

H. K. Martin and Oscar L. Tompkins, of Dothan, for petitioner.

J. Hubert Farmer, of Dothan, opposed.

PER CURIAM.

Leo Bender brought suit against H. F. York in the circuit court of Houston County. In aid of that suit a writ of garnishment was issued against E. H. Hollis. There was a judgment in favor of plaintiff, Bender, against the defendant, York, and against the garnishee, Hollis.

Hollis, the garnishee, appealed to the Court of Appeals, which court reversed the judgment against him.

We granted certiorari to review the decision and judgment of the Court of Appeals.

We quote that part of the opinion of the Court of Appeals which relates to the facts and circumstances out of which this controversy arose:

"The defendant, York, entered into an oral agreement with the garnishee, Hollis, by the terms of which the latter was to furnish eighty-five hogs which the former would take and pasture on his ungathered peanut crop. Mr. York was to look after the hogs, water them, and give them such attention as their needs required. It was agreed further that the hogs would be weighed at the time they were turned into Mr. York's peanut field, and at the expiration of the feeding and fattening period they would again be weighed, and sold. The owner of the swine was to receive pay for the initial weight of the hogs plus one-half the amount of the gained weight. Mr. York was to receive the other half of the weight gained.

"On this basis the hogs were fed, fattened and sold. The proceeds from the sale thereof were divided according to the indicated understanding, and payment was made by the purchaser to each interested party by separate checks.

"We note the following dates: The hogs began feeding on the peanuts some time in October, 1944. The garnishment writ was issued November 21, 1944. Service was had on the same day. The hogs were sold December 15, 1944. Written answer to the garnishment was filed December 27, 1944. Motion for oral examination of garnishee bears filing date of January 9, 1945. The court entered judgment against the garnishee on December 7, 1946."

The rights of the parties to this action depend largely upon the construction to be given the agreement made between the defendant, York, and the garnishee, Hollis.

The Court of Appeals held "that the agreement between the parties made them tenants in common." We cannot agree with the construction placed on the agreement by the Court of Appeals.

The authorities make the distinction between bailment and joint adventure to be, in the one the bailor by the contract retains no control over the thing bailed and has no active part in the business; but if he is due to render services therein he will be held to have acquired the relation of a joint adventurer. 33 Corpus Juris 844.

Some of our cases have not emphasized such a distinction. Elledge v. Hotchkiss, 222 Ala. 129, 130 So. 893; Saunders v. McDonough, 191 Ala. 119, 67 So. 591. But we have held that there must be a mutual right of control, though one may have turned over to the other actual control. Peoples v. Seamon, 249 Ala. 284, 31 So.2d 88.

In the case of Beckwith v. Talbot, 2 Colo. 639, there was an agreed value of cattle which the second party was to graze and to which he was to render certain services. The owner was by the agreement later to sell the cattle and deduct the agreed value and one-half of the remainder, the other half going to the second party. The second party sued the owner for breach of the contract. The court said it was not a partnership, for there was no community of loss, nor community of title, nor joint ownership in the herd, and the original owner alone had the right under the contract to dispose of them. It was so expressed. Its nature was not characterized.

In James v. Kuhn, 121 Cal.App. 69, 8 P.2d 526, the owner, Kuhn, was by the express terms of the contract, after the grazing by James, to sell the sheep, and retain an agreed amount and the balance was to be equally divided between the parties. Kuhn sold the sheep. The court stated that a characterization of the transaction was unnecessary, whether a partnership, joint adventure, agency or bailment. The terms of the contract were given controlling effect.

If in the instant case it is a bailment, York was bailee. He could as such sue Hollis for a breach of contract if he breached it.

If it is a joint adventure, York could sue Hollis, since the transaction was closed and the profits ascertained by a simple computation which they had struck, only if Hollis received more than his share of the proceeds of the sale. The law in that event would imply a promise by Hollis, having possession of the fund, to pay to York his share, for which an action at law in assumpsit would lie. 33 Corpus Juris 866, § 83; 48 C.J.S., Joint Adventures, § 12.

It does not appear that Hollis breached any contract or duty he owed York as bailee or as a co-adventurer, because the agreement was not a promise by Hollis to pay York an amount equal to one half of the profits, nor any other sum. But the profits were simply to be divided between them. Hollis was not obligated by the contract to sell the hogs and pay York his share, and such event did not occur.

In no event was Hollis due York any sum of money on account of the transaction for which York could sue him in assumpsit, since Hollis received no more than his share out of the sale of the hogs.

If Hollis had done so, he would be liable to York in assumpsit whether the transaction be one of bailment or joint adventure.

Since it appears that Hollis did not receive more than his share of the proceeds of the sale, but that York's share was paid to York by the purchaser, it does not appear either by contract or conduct that there ever arose out of the transaction an occasion when York could have sued Hollis in assumpsit.

We do not think York and Hollis were tenants in common, but that there was no liability from Hollis to York subject to a suit in assumpsit and, therefore, garnishment would not lie against Hollis as garnishee.

For the reasons above indicated, we concur in the conclusion reached by the Court of Appeals.

The judgment of the Court of Appeals is, therefore, affirmed.

BROWN, FOSTER, SIMPSON, and STAKELY, JJ., concur.

304

LAWSON, Justice (dissenting).

The weight of authority seems to be that as to animals delivered by an owner to another person under such a contract, the relationship of bailor and bailee is created. Edgar v. Parsell, 184 Mich. 522, 151 N.W. 714, Ann.Cas.1917A, 1160; Manti City Savings Bank v. Peterson et al., 30 Utah 475, 86 P. 414, 116 Am.St.Rep. 862; Haws et al. v. Fracarol, 9 Cir., 27 F.2d 74; Robinson v. Haas, 40 Cal. 474; Woodward v. Edmunds, 20 Utah 118, 57 P. 848; Turnbow v. Beckstead et al., 25 Utah 468, 71 P. 1062; Wetzel v. Deseret Nat. Bank et al., 30 Utah 62, 83 P. 570; Clay, Robinson & Co. v. Atencio, 74 Colo. 17, 218 P. 906.

Where such contracts provide that the person feeding and caring for the animals is to receive a portion of the increase or, in the case of sheep, a portion of the wool, the weight of authorities appears to be that as to the increase and the wool, when shorn, the parties are tenants in common. Deutscher v. Broadhurst, 69 S.D. 554, 12 N.W.2d 807; Samuel and Lewis Hewlett v. Owens & Moore, 50 Cal. 474; Beezley v. Crossen, 14 Or. 473, 13 P. 306; Mahoney v. Citizens' Nat. Bank of Salmon, 47 Idaho 24, 271 P. 935.

I am of the opinion that the proper construction to be placed on the agreement here under consideration is that it established the relationship of bailor and bailee, a bailment for the benefit of both parties. Hollis was to be benefitted by the services rendered by York, as well as by the weight to be gained by his hogs. Under the agreement York was to be paid for his services and his peanuts in the event there was an increase in the weight of the hogs, the amount of such compensation to be determined by the weight gained by the hogs. It is clear to my mind that the parties did not contemplate a sale of the hogs or any interest therein.

At the time the writ of garnishment was served on the garnishee, Hollis, there was a contract out of which, in the usual course of things, a money liability was certain to spring. Teague, Barnett & Co. v. Le Grand, 85 Ala. 493, 5 So. 287, 7 Am.St.Rep. 64. At the time the answer of the garnishee was filed, the hogs had been sold and York had received his compensation for feeding and caring for the hogs. Under such circumstances, I think the trial court correctly entered judgment in favor of the plaintiff, Bender, against the garnishee, Hollis.

As I understand the majority opinion, the conclusion there reached is influenced by the events which occurred subsequent to the date on which the writ of garnishment was served on Hollis. The mere fact that when the hogs were sold, several weeks after the writ of garnishment was served, the purchaser made a check direct to York, cannot in my opinion have any bearing on the construction to be placed on the contract between York and Hollis. Such a procedure could have been followed as a means of preventing vendor from reaching the money coming to York as a result of his contract with Hollis. Under the contract Hollis had title to the hogs when they were delivered to York and never parted with that title. Hollis was the only man who could sell the hogs. Under the contract, when the hogs were sold Hollis was liable to York for an amount equal to one half of the proceeds received from the increased weight of the hogs. The fact that the check was not made from Hollis to York, in my opinion, sheds no light on the principal inquiry in this case, viz., what relationship did the contract create between Hollis and York?

LIVINGSTON, J., concurs in these views.