### No. 2,410.

ALFRED ROBINSON, RESPONDENT, v. LOUIS HAAS, APPELLANT.

BAILMENT.—The delivery of personal property to another, by the owner, to be taken care of, and returned at a stated time, upon the terms that the latter is to be compensated out of its increase, is a mere bailment, for the benefit of both parties, and does not divest the title of the true owner.

IDEM.—SALE BY BAILEE.—EVIDENCE.—The purchaser of property, from a bailee, stands in privity with the latter, and the letters of the bailee, written to his bailor, or other admissions of his while in possession, going to show how he held the property, are proper evidence against the bailee, or his transferee.

SALE OF PERSONAL PROPERTY.—TITLE.—A sale of personal property passes to the purchaser only such title as the vendor had.

BAILOR AND BAILEE.— PARTNERSHIP.—A contract between A. and B., by which A. transfers to B. the possession of a flock of sheep, upon the terms that B. should herd and take care of them for three years, at the end of which time he was to return to A. the original number of sheep entrusted to him, and the increase be equally divided between them, does not constitute a partnership between A. and B. in the sheep.

APPEAL from the District Court of the Twelfth District, City and County of San Francisco.

The plaintiff owned a large number of sheep, and contracted with O. G. Rood to keep them, for a certain length of time, in Santa Barbara county, upon the terms that at the end of that time, the original number of sheep should be made good to plaintiff out of the flock; and the increase, if any, divided between plaintiff and said Rood.

In 1864, which was a dry season, Rood, by permission of plaintiff, left Santa Barbara county, with the sheep to seek

for pasture. After leaving Santa Barbara County, Rood continually wrote to plaintiff, concerning his movements. Finally, in 1865, he returned to California, which he had left, and arrived at Visalia in Tulare county. While at Visalia, Rood sold the sheep to the defendant.

Plaintiff having ceased to hear from Rood, made every effort to find him and finally learned that defendant had purchased a flock of sheep of him, on the thirty-first day of March, 1865. In June, 1865, defendant was informed that the sheep belonged to plaintiff. Afterwards the plaintiff demanded the sheep of defendant, which demand was refused.

Plaintiff then brought his action. On the trial the letters from Rood to the plaintiff while he (Rood) was in possession of the sheep, going to show how he held them, were offered in evidence by the plaintiff, and admitted against the objection of defendant.

Judgment was for plaintiff and defendant appealed.

*M. G. Cobb*, for Appellant.

The letters written by Rood to plaintiff contain propositions of fact, which are very material to the issue. They are:

1. That O. G. Rood moved the flock of sheep he took with him from Santa Barbara County in June, 1864, from place to place, until on the 9th day of March, 1865, he had them at Visalia.

2. That on the 24th day of March, 1865, the same sheep were still in his possesion at Visalia, and required shearing.

3. That "a good many," of the original 2,000 ewes and "nearly all" the increase, ("my," the writer's increase,) died on the way.

4. That on the 24th day of March, 1865, the flock numbered 1,700 head in all; and

5. That Rood considered the sheep as being owned by the plaintiff.

Taken in connection with the defendant's admissions to the witness Wise, and with his letter to and draft on the

witness Farrish, these letters tend to establish the indentity of the 1,500 sheep purchased by the defendant of Rood, with the flock moved by the latter from Santa Barbara County in June, 1864, if not almost wholly with the 2,000 ewes delivered by the plaintiffs to Rood under that written contract.

But, if these letters be excluded from the evidence in the case, then there seems to be no proof connecting the 1,500 sheep purchased by the defendant of Rood in the beginning of April, 1865, (we here give the most liberal construction to plaintiff's case, as made out by him on the trial) with the sheep which nearly a year prior we find in the possession of Rood in Santa Barbara County, while there *is* evidence on the part of the defendant directly tending to show that those 1,500 sheep are different and other sheep, than those which were in the possession of Rood in Santa Barbara County under that written contract.

We conclude, then, that the jury considered these letters as very material evidence—as establishing the plaintiff's property in those 1,500 sheep.

Yet, the statements which these letters contain do not derive their credibility from having been made by a witness under oath, but solely from the veracity and competency of a person, whom the very party which asks us to accept those statements as true, charges with gross bad faith and dishonesty—of a person who had made them without the sanction of an oath, and whose veracity and competency for making them, the defendant whose rights they so materially affect, has had no opportunity to test. These letters are *hearsay;* they do not come under the exceptions to the rule excluding *hearsay* evidence and they cannot bind the defendant, because they were not written by him. (*Vide* 1. Phillips on Evidence, Chap. 8, Sec. 1; Greenleaf on Evidence, ¶ 98; Greenleaf on Evidence, ¶ 99; 7 Cranch, 295; *Crocker* v. *Lewis*, 3 Sumner 1, 3 Cal. 100.)

The written contract between Rood and the plaintiff made them copartners, if only as to the increase from the two thousand ewes, then Rood might have made a sale of such

increase to the defendant valid, and binding upon the plaintiff. The inquiry then here is ; did that written contract create a partnership between the plaintiff and Rood ? (Parsons on Partnership, ch. 4, page 36 ; Parsons on Partnership, ch. 5, page 41 ; 1 Daly, N. Y. Com. Pleas, 520 ; 47 Barb. 317 ; 30 Cal.) That plaintiff gave to Rood the right to, and Rood did, move the sheep from place to place, over a large area of country, and for a long time plaintiff had voluntarily parted with the possession of the sheep, and had given the absolute management and control over the same to Rood, all going to show the apparent right of disposition, and if Rood had the apparent right of disposition the plaintiff could not recover. (*Vide Crocker* v. *Crocker, et. al.* 31, N. Y. 507.

*Tully R. Wise,* for Respondent.

The question in reference to the admission of the letters of Rood in evidence is, *were the letters properly admitted in evidence, and not whether they were to be accepted as true.* The first is a question of law for the Court, and the last a question of fact for the jury.

Haas and Rood were privies, Haas had Rood's title, and nothing more, and Rood's statement as to what his title was, while he was connected with the property, are evidence against Haas. (*Vide* 1. Greenleaf on Evidence, sec. 23; *vide* Greenleaf, vol. 1, sec. 189, edition of Redfield ; also sec. 190 and 191, and *seq. idem* ; *Heywood Rubber Co.* v. *Deucklee,* 30 Vt. 29 ; *Bard* v. *Fitzpatrick,* 4 Gray 89 ; *Miller* v. *Bingham,* 29 Vt. 82.) Even if the plaintiff and Rood had been partners under the contract, then Rood would have had no right to sell any sheep, unless there was an increase in which he had an interest while the contract was in existence. This was never pretended by the defendant to have been the case.

When parties are sought to be made partners, by operation of law, so far as third persons are concerned, it is material to inquire, whether their contract contemplates dealing with such third person, or whether the party sought to be charged had any interest, either direct or indirect,

in the transactions upon which it is sought to charge him. The only item in which Rood and Robinson were jointly interested, so far as third persons were concerned, was in the sale of the wool, the wethers, and the increase, which was to be sold by Robinson, and half paid to Rood. (*Vide* Story on Part., secs. 34, 36, 38, 42, 43, 30 Cal. 97 ; *vide Wheeler* v. *Farmer*, July T. 1869.)

If Robinson had given Rood a bill of sale; or if a negotiable instrument had been indorsed and delivered to him, or if he had made a deed, absolute on its face to him, then he would have been invested with apparent ownership. (*Vide* 13 Barb. p. 372).

WALLACE, J., delivered the opinion of the Court, RHODES, C. J., and CROCKETT, J., concurring:

There was no error in admitting in evidence the letters of Rood, written by him while he was in possession of the sheep, and addressed to Robinson. Hass claimed the property by purchase of Rood; he therefore stood in privity with the latter, and these letters, or any other admissions made by Rood while in possession, going to show how he held the property, would be proper evidence against Rood himself, or any subsequent transferee of his.

There is nothing in the point that the contract of May, 1863, between Robinson and Rood, constituted them partners. It was simply an employment of Rood to take care of Robinson's sheep, upon the terms that at the end of three years, the original number of 2,000 head should be first returned to Robinson, and then the increase should be equally divided between Robinson and Rood. At the time Rood sold to Haas there was no increase whatever over the original number, but several hundred less than that number. Rood could have claimed none of these sheep as against Robinson; and we have not been pointed to any principle of law by which Haas occupies a more favorable position than Rood, his vendor, would have done.

The Court below refused to instruct the jury, at the instance of the defendant, that as Robinson had intrusted his

sheep to Rood to drive to distant parts of the State in quest of feed, he thereby gave him credit, and enabled him to impose himself on Haas as the owner of the sheep, and that—Haas having purchased under these circumstances—Robinson, though he might be the true owner of the sheep, could not recover.

The maxim, *nemo plus juris*, etc., is generally applicable to transfers of chattels. By the general rule of the English common law, a sale of goods made would pass to the purchaser only such title as the vendor had. Sales in market *overt* formed an exception to this rule, but in this State there is no market *overt*.

The delivery of the sheep to Rood by Robinson, was a mere bailment for the benefit of both parties, and did not divest the title of the true owner.

We see no error in the record; and the judgment and order denying a new trial are affirmed.