## JAMES C. WOODWARD, RESPONDENT *v* JOHN EDMUNDS, APPELLANT.

REPLEVIN — WRONGFUL TAKING ALLEGED — GRAVAMEN — NO DE-
MAND NECESSARY — WHERE CAUSE OF ACTION AROSE — CONST.
ART. 8, SEC. 5. "SHEEP CONTRACT" — WHEN A BAILMENT AND
NOT A SALE. CONTRACT AMBIGUOUS — PRACTICAL CONSTRUC-
TION BY PARTIES—ADOPTED BY COURT. UNSIGNED CONTRACT—
WHEN INVALID.

*Replevin—Wrongful Taking Alleged—Gravamen—No Demand Nec-
essary—Where Cause of Action Arose—Const. Art. 8, Sec. 5.*

In an action in replevin, where the gravamen of the action as
shown by the pleadings, is the wrongful taking and unlawful
detention, the only issue is the taking, no demand was neces-
sary and the cause of action arose, under Const. Art. 8, Sec.
5, in the county where the unlawful taking and detention
occurred. .

*"Sheep Contract"—When a Bailment and Not a Sale.*

A contract or lease of a certain number of sheep by E, to W.,
on shares for a certain period of time, providing for payment
of a certain amount of wool per head and a fixed increase
per one hundred head delivered, and providing for a redeliv-
ery of the sheep is a bailment and not a sale.

*Contract Ambiguous — Practical Construction by Parties — Adopted
by Court.*

Where there is ambiguity in a contract, a practical construction
given it by the parties before controversy arose should be
adopted by the court.[1]

*Unsigned Contract—When Invalid.*

A contract never signed by one of the parties to be bound
thereby cannot be held to be valid where at the time of
drawing up the instrument there was a controversy about
sureties and one party signed and left the agreement with

---

[1] See *Peay* v. *Salt Lake City*, 11 Utah, 331, 342.

the other and went away without furnishing security and there is no evidence to show a waiver of security thereafter.

(Decided June 27, 1899.)

Appeal from the Seventh District Court, San Pete County, Hon. Jacob Johnson, *Judge.*

Action in replevin to recover certain sheep, or their value.

From a judgment for plaintiff defendant appeals. *Reversed.*

*Messrs. Brown & Henderson* and *A. G. Sutherland, Esq.*, for appellant.

*D. D. Houtz, Esq., Ferd. Erickson, Esq.*, and *Soren X. Christensen, Esq.*, for respondent.

BARTCH, C. J.

This was an action in replevin to obtain possession of 2178 head of sheep, or judgment for their value in the event that delivery could not be made. The plaintiff recovered judgment for 2016 head, which included 1627 delivered to him on the writ, and 389 head for which, they not having been delivered, a money judgment was rendered in the sum of $641.85. The complaint was filed on September 20, 1897, and it was alleged, *inter alia*, that on August 26, 1897, at Orangeville, Emery county, Utah, the plaintiff was the owner and entitled to the possession of 2173 head of sheep of the value of $3,802.75; that the defendant, on the day last mentioned, at the county of Emery, wrongfully took said sheep from the plaintiff's possession; and that upon demand made therefor the defendant refused to deliver possession to plaintiff and continued to withhold the same. The judgment

demanded was for the possession of the sheep, or, if delivery could not be had, for their value.

The allegations of ownership and right of possession of plaintiff, and unlawful taking and withholding by defendant, and demand, were all specifically denied in the answer, filed September 30, 1897. It was then set up in the answer, as an affirmative defense, that 1,900 head of the sheep belonged to the defendant, and, at the time of the taking, were in the possession of the plaintiff, under a lease made about June, 1897, to be cared for and herded by the plaintiff, at a certain rental as to wool and increase, until September, 1897, when they were to be returned to the plaintiff at Wales, San Pete county, Utah; and that when, on August 26, 1897, the defendant took the herd at Orangeville and drove them to his place at Wales, the title of the sheep was in the defendant and they belonged to him. Under these pleadings the cause was tried before the court without a jury.

We will first notice the question of jurisdiction. As the pleadings thus stood, the gravemen of the action was the *wrongful* taking and *unlawful* detention. If the taking was wrongful then the detention was unlawful from the first and continued so.

At common law the action would have been replevin in the *cepit*, which resembles the old common law trespass, *vi et armis*, and puts in issue only the taking, and in such case, the taking being wrongful no demand for a return of the property was necessary before the bringing of suit. Nor under our system is a prior demand necessary where the suit is to recover property tortiously taken. Phillips on Code Pl. sec. 492; Cobby's Law of Replevin, sec. 8; *McNally* v. *Connolly*, 70 Cal. 3; *Surles* v. *Sweeney*, 11 Ore. 21.

The alleged invasion of the plaintiff's rights occurred in

Emery county. Both the unlawful taking and detention of property — the things which gave rise to his cause of action, in the first instance, took place, as appears from the pleadings above referred to, in that county, and under our constitution, Art 8, sec. 5, the district court in San Pete county had no jurisdiction to try the case. The demand made for the return of the property, as we have seen, was not necessary to the bringing of the action for the wrongful taking and detention, and, therefore, constituted no part of the cause of action and could not affect the question of venue. It is a fundamental right of every defendant in an action in this State to have the same commenced and tried within the county where the act, which gave rise to the cause of action, occurred, subject to a change of venue in such cases as may be provided by law. This court so held in *Konold* v. *Rio Grande Western R'y Co.*, 16 Utah, 151, where it was said : "Though a court has jurisdiction of the subject-matter of an action commenced in the county where the cause arose, and power to hear and determine the cause, and render judgment therein, yet the same court, in a like case, brought before it in the first instance, has no such jurisdiction and power, if it appear as a fact that the cause arose in another county, or without the territorial limits of its jurisdiction; and if the court assumes jurisdiction under the circumstances last indicated, and attempts to hear and determine a cause, any judgment which it may render will be null and void, and of no effect whatever. The only power it has, under such circumstances, is to dismiss the case. The objection that the court has no jurisdiction to hear and determine the cause cannot be waived." *Deseret Irr. Co.* v. *McIntyre*, 16 Utah, 398; *Condon* v. *Leipsiger*, 17 Utah 498; 55 Pac. Rep. 82; *Brown* v. *Bach*, 17 Utah 435; 53 Pac. Rep. 991; *Mosby* v. *Gisborn*, 17 Utah 457; 54 Pac. Rep. 121.

The force of the foregoing principles and rules of law
were doubtless recognized by counsel for the respondent,
at the trial of the cause, for, as shown by the record, after
the testimony on both sides had about all been introduced,
at the argument of the question of jurisdiction, they
sought for and obtained leave of court to amend, and
thereupon did amend, their complaint. The purpose of
the amendment evidently was to so change the pleadings
as to make them conform to what, at common law, was
replevin in the *detinet*, to avoid the fatal effects of the
venue as laid in the original complaint which would have
rendered a dismissal of the action imperative. When the
action is such as would constitute replevin in the *detinet*
a demand and refusal must be alleged in the complaint,
for that action lies where the original taking was not
wrongful—where the defendant came lawfully into pos-
session of the goods or chattels, but was bound to relin-
quish possession upon demand made therefor, and upon
demand and refusal continues to retain them wrongfully.
In such case there is no wrongful detention and no right
of action until a demand is made and met with a refusal.
Phillips on Code Pl. sec. 492; 3 Bl. Comm. 151–153;
*Campbell* v. *Jones*, 38 Cal. 507.

It follows that immediately at the time when and
place where the demand and refusal occur the cause of
action arises and not until then. Hence, when, as in this
State, the wrongful detention is the gist of the action, the
case must be tried in the county where the property is
found and demand made. Whether, however, the wrong-
ful detention, or the wrongful taking and detention, be
the gist of the action, in either case, the plaintiff, in re-
plevin, in order to recover, must show that, at the time of
bringing the action he had the right of immediate posses-
sion. 3 Bl. Com. 145; 1 Chitty Pl. 168; Phillips on Cod.

Pl. secs. 99, 106; Cobbey on Replevin, sec. 1124; *O'Connor* v. *Blake*, 39 Cal. 313; *Whitwell* v. *Wells*, 24 Pick. 25, 33; *Johnson* v. *Neale*, 6 Allen, 227.

In the case at bar it does not appear, as we view the evidence before us, that the plaintiff, at the time when this action was brought, had any title in the property or any right of possession therein, which would entitle him to maintain this action, even if the venue was properly laid in San Pete county under the amended complaint. If we are right in this, then, if it were conceded that, in the amended complaint, the plaintiff stated a case which was triable in San Pete county, and that the amendment was properly admitted, still the plaintiff has shown no right of recovery in this form of action. Whether then the cause were tried in San Pete or Emery county would make no difference as will presently be seen. For this reason we shall refrain from deciding the question whether or not the court transcended its power in authorizing the amendment to the complaint, and proceed to determine the rights of the parties as shown by the record and their contracts in evidence.

It appears that about October, 1894, the defendant leased, by contract in writing, to the plaintiff and one Barentsen 1,461 head of sheep on shares, until September 1, 1895, the lessor to receive a certain amount of the wool and increase of the herd. The sheep had the defendant's permanent mark on them and were to be returned to him at his place in Wales at the expiration of the lease. The next year, about September, 1895, the herd, then numbering 1,606 head, was again leased to the same parties under similar terms and conditions, until the first of September, 1896. After the expiration of this contract, there were delivered to the defendant 1,753 head, and about October 10, 1896, were leased to the plaintiff until June 15, 1897,

Barentsen no longer continuing as a lessee. Under this lease the sheep at the expiration of the term were to be delivered at defendant's home, same as previously, but about June 10, 1897, the defendant went to Orangeville, Emery county, where the sheep were, and they were delivered to him there. It appears that defendant's sheep were always marked with his own permanent mark. The number delivered to defendant on June 10, 1897, was 1,900 head, and they were again leased to plaintiff by written contract, as follows:

"This agreement made this 10th day of June, 1897, between John Edmunds, of Wales, San Pate county, Utah, party of the first part, and James C. Woodward and sons, of Orangeville, Emery county, Utah, parties of the second part.

"*Witnesseth:* That the said John Edmunds in consideration of the covenants on the part of the parties of the second part 'hereinafter contained,' doth covenant and agree to and with the said Woodward and sons that he let and deliver to the said Woodward and sons (1900) nineteen hundred head of sheep on shares until September 1st, 1897, and the said Woodward and sons in consideration of which doth covenant and agree to and with the said John Edmunds to pay two pounds of wool per head and eight increase per hundred head, and no sheep to be disposed of from herd or herds without the consent of the said John Edmunds. Wool to be delivered at Wales at the time the sheep are shorn; 1,897 sheep to be delivered at Wales on or before September 1, 1897, to the said John Edmunds or his agent, and am to have a fair cut of the herd or herds and in good sound condition and dipped.

"It is mutually agreed that all the covenants 'herein contained' shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties herein named.

"In witness whereof we have hereunto set our hands and seals the day and year first above written.

"JAMES C. WOODWARD,

"JAMES F. WOODWARD,

"JOHN EDMUNDS."

The terms of this agreement are quite similar to those in all the former agreements above referred to, and it will be noticed that the contract continued in force only from June 10, to September 1, 1897.

The appellant contends that the transaction evidenced by this contract was a mere bailment, and that the title to the sheep remained in him, while the respondent insists, and the court so found and held, that it was an absolute sale, and that the title to the sheep passed to the respondent on June 10, 1897, when the contract was made. We are of the opinion that the position of the respondent is not well founded, and that the court erred in finding and holding that the transaction was a sale. There are no words of sale in the instrument—no language whatever showing a transfer of title, or a provision to pay for the property. Nor does the language employed indicate that it was the intention of the parties that the transaction should be a sale of the property. On the contrary the instrument contains an express provision that no sheep should be "disposed from herd or herds without the consent of said John Edmunds," who was the lessor. The mere facts that the lessee was to pay the rental in wool and certain portion of increase, and at the expiration of the term to deliver for the original number of sheep a "fair cut of the herd or herds," are not sufficient under the circumstances to show that the parties intended a sale. It is clearly shown by the evidence that the sheep delivered, by the lessor to the lessee, were all distinctly marked with the lessor's permanent mark, the same as on previous

occasions when they were so leased; that the contract in fact as well as by its terms was to expire on September 1, 1897, and that it extended through a period of time when there was not likely to be an increase of the herd, unless by the lessee receiving sheep from other parties. Under these circumstances notwishstanding the fact that the agreement contains a clause that the sheep to be returned shall be a "fair cut" of the herd, such agreement being doubtless a mere copy of the former contract between the parties, it would not seem unfair to assume that, in this particular instance, the parties intended a return on September 1, 1897, of the identical sheep. But, even if the time and duration of the contract had been such that a natural increase of the flock might have been expected, still the facts are not such as would warrant the court in finding and holding that the transaction was an absolute sale.

A similar contract was before the Supreme Court of California, in *Robinson* v. *Haas*, 40 Cal. 474. In that case it appeared that the "plaintiff owned a large number of sheep, and contracted with O. G. Rood to keep them for a certain length of time in Santa Barbara County, upon the terms that at the end of that time, the original number of sheep should be made good to plaintiff out of the flock, and the increase, if any, divided between plaintiff and said Rood." The contract, it seems, was for three years. Rood after delivery to him, cared for and maintained the sheep for a large portion of the time, and then in March, 1865, sold the same to Haas, the defendant, who in June following was informed that the sheep belonged to the plaintiff. After learning of the sale, the plaintiff demanded the sheep from Haas, and, upon his refusal to deliver them, brought suit and recovered judgment for the same. The appellate court in affirming the judgment, in

part, said: "There is nothing in the point that the contract of May, 1863, between Robinson and Rood, constituted them partners. It was simply an employment of Rood to take care of Robinson's sheep, upon the terms that at the end of three years, the original number of 2,000 head should first be returned to Robinson, and then the increase should be equally divided between Robinson and Rood. At the time Rood sold to Haas there was no increase whatever over the original number, but several hundred less than that number. Rood could have claimed none of these sheep as against Robinson; and we have not been pointed to any principle of law by which Haas occupies a more favorable position than Rood, his vendor, would have done. * * * The delivery of the sheep to Rood by Robinson, was a mere bailment for the benefit of both parties, and did not divest the title of the true owner." *Beezley* v. *Crosson*, 16 Ore. 72.

If, however, there should be any doubt as to the interpretation, which is thus placed upon the contract under consideration, such doubt would seem to be removed by the acts and conduct of the parties themselves, in relation thereto. The evidence clearly shows that from 1894, when the respondent first leased the herd, the sheep were about the time of the expiration of each successive lease, counted out to the appellant, marked with his permanent mark, and then again delivered over to the lessee. They were constantly treated by the parties as the lessor's property. Again they were so treated when, on August 25, 1897, while the last lease was yet in force the respondent himself went to the appellant and again sought to lease the same sheep which he then had in his possession, under the lease hereinbefore construed, and actually signed an agreement, which was then and there drawn up for another term, and contained practically the same terms

and conditions, as the one which was about to expire, although, owing to some disagrement between the parties the instrument was not executed by the appellant. Manifestly, by their acts and conduct, the parties to the instrument, construed it as one of bailment merely, and where there is any ambiguity in a contract, the practical construction which the parties to the instrument have given it, before any controversy arose between them should be adopted by the court. This court so held in *Peay* v. *Salt Lake City*, 11 Utah, 331, 342.

It is further insisted for the respondent that the agreement, drawn up, on August 25, 1897, was a valid contract, although not executed by the appellant, and that in pursuance thereof the respondent had the right to the possession of the sheep for the term therein mentioned. In answer to this contention, it is sufficient to say that, although the lease was drawn up on the day mentioned, and executed by the respondent, it was never executed by the appellant. It is apparent from the evidence that, at the time of the drawing up of the instrument, there arose, between the parties, a controversy respecting sureties; and that the respondent finally executed the instrument, left it with the appellant and went away without furnishing the appellant the security he wanted. There is nothing to show that the appellant finally waived security. What transpired subsequently indicated that he did not. He never signed the lease, but shortly after the respondent left the house, the appellant, taking another man with him, started for the herd, and, upon arriving there, took the sheep and drove them to his home.

Under these circumstances, the court is not warranted in holding that the contract, which has never been executed by one of the parties to be bound thereby, is valid.

It follows, as a necessary sequence, that the respondent,

not having any title in the property, and his lease under which he held possession having expired on September 1, 1897, without another lease having been properly made and entered into, had no immediate, nor any right of possession of the sheep on September 20, 1897, when he brought this suit in replevin, and hence cannot recover in this action.

Having reached this conclusion we do not deem it necessary to discuss any other question presented.

The judgment must be reversed, with costs, and the cause remanded with directions to the court below to proceed in accordance with this opinion.

It is so ordered.

I concur in the judgment.

MINER, J.

I concur in the reversal of the judgment, but dissent from that portion of the decision relating to the question of jurisdiction.

BASKIN, J.