# HENNEN *v.* STREETER ET AL.

## No. 3063

April 10, 1934        31 P. (2d) 160.

*C. E. Robins,* for Appellant:

*James Dysart,* for Respondent:

## OPINION

By the Court, COLEMAN, J.:

H. A. Streeter, as receiver of the First National Bank of Winnemucca, Nevada, brought suit against Jose Sustacha and others to foreclose a mortgage, in which suit D. D. Ogilvie was on May 22, 1933, appointed receiver, pursuant to which appointment he took possession of several thousand head of sheep. On May 23, 1933, J. H. Hennen, claiming that Ogilvie, as such receiver, had taken possession of 1,590 head of sheep belonging to him, demanded possession thereof. Ogilvie

refused to surrender possession of the sheep demanded, whereupon, on June 9, 1933, Hennen filed his complaint in intervention in said action. Upon the conclusion of the hearing in the intervention proceedings, the court entered judgment in favor of Hennen, the intervener, from which, and an order denying a motion for a new trial, Streeter, as receiver, has appealed.

On June 25, 1929, Jose Sustacha and Francisca Sustacha, his wife, executed their promissory note to the bank for $17,400, and executed their mortgage upon certain described sheep to secure said note. The mortgage also covers all the increase, additions and substitutes to the sheep specifically described in the mortgage.

1.   On April 4, 1932, J. H. Hennen (the intervener) entered into a written agreement, designated a lease, with Jose Sustacha, one of the defendants, wherein it was agreed that the said Hennen, as lessor, "hereby lets and leases unto the said Sustacha, lessee, for the term beginning on the date hereof and ending October 31, 1933, twelve hundred and fifty breeding Merino ewes" of designated ages, in consideration of the payment of $2,400, payable as follows: $600 May 15, 1932; $600 September 15, 1932; $600 May 15, 1933; and $600 September 15, 1933. It is provided in said agreement that the lessee shall have the right to the use of a certain forest permit, standing in the name of the lessor. It further provides that the lessee shall retain all wool grown upon said sheep and all lambs produced by said ewes during the 1932 and 1933 seasons. The lessee covenants to keep said sheep in good condition, and that he will return to the said party of the first part (lessor) the said 1,250 head of sheep of the average grade of Merino ewes and of the age, at the time of such return, "as hereinbefore set out" (age at date of lease.)

The lease further provides that time is the essence of the agreement, and that, in the event the lessee shall fail, refuse, or neglect to make the payments as provided, the lessor may terminate the agreement and repossess the sheep.

The lease contains some other conditions which are not material to the disposition of this case.

On the same day and in a separate agreement the said parties made another agreement as to a band of 340 head of sheep, providing that Sustacha should keep all wool and increase, and to return 340 average grade Merino ewes October 31, 1933.

The lower court, at the conclusion of the trial, made its findings of facts and conclusions of law, wherein it found that after the execution of the agreements above mentioned all of the sheep leased by the lessor were placed and run with the sheep owned by the lessee and mortgaged to the First National Bank of Winnemucca, and so continued to be run until the trial upon the complaint in intervention; that lessor, on or about May 23, 1933, made demand upon said Ogilvie, as receiver, for delivery to him of the sheep so leased, and that such demand was refused; that about the time and immediately after the possession of said sheep by said Ogilvie, as receiver, they began to give birth to lambs, and that at the conclusion of said lambing season 525 lambs had been born from said band of 1,250 sheep so leased; that during the fall of 1932 lessor, with the consent of the representative of the First National Bank in Winnemucca, caused to be returned to the herd of lessee, as increase of the leased sheep, approximately 400 head of ewe lambs; that, while the said Ogilvie, as receiver, had possession of said sheep, he caused to be shorn from them the wool crop then on said sheep, which was part and parcel of the said sheep belonging to said lessor; that none of the said leases were recorded. The court further found that the receivers "still hold and has in his possession the said 1,250 breeding ewes belonging to the said J. H. Hennen," and that said receivers took over 340 head of sheep above mentioned as having been leased on April 4, 1932, "and ever since have had and now have in their possession the said 340 head of sheep belonging to the said J. H. Hennen," and that the plaintiff was entitled to the return thereof.

The court further found that under the terms of said

lease of April 4, 1932, the said Hennen was entitled to the immediate return of the said 1,250 breeding ewes before the wool was shorn from them; to 525 head of lambs, the 1933 increase thereof, and that he was entitled to the wool so shorn, which amounted to 8,581.87 pounds, that said wool was sold for $1,720.15, and the total cost of shearing said sheep was $210.

Judgment was entered in favor of Hennen in the sum of $1,510.15, for 1,590 head of sheep, and for 525 head of lambs.

The theory of appellant is that the title to all of the sheep delivered to Sustacha pursuant to the agreement of April 4, 1932, passed to Sustacha from Hennen, and that, pursuant to the provisions in the mortgage from Sustacha to the bank, to the effect that the mortgage should cover all increase, additions, and subtractions, the title to the sheep became vested in the bank and its receiver, and hence Hennen cannot recover.

While there is considerable force to the reasoning of counsel for appellant, we think the great weight of authority applicable to such a situation is to the effect that the agreements in question constituted bailments for the benefit of both Hennen and Sustacha.

One of the earliest cases in this country involving a similar agreement is that of Robinson v. Haas, 40 Cal. 474. In the case mentioned, Robinson, the owner of the sheep, contracted with one Rood in 1863 whereby it was agreed that Rood should keep the sheep in Santa Barbara County. Later, due to the fact that there was a dry season, Rood, with permission of plaintiff, took the sheep into Tulare County and later into Visalia County. In 1865, while the sheep were in Visalia County, Rood sold the sheep to defendant Haas. Three months after such sale Robinson learned of the transaction, demanded possession of the sheep of Haas, and upon his refusal to deliver them brought suit. Judgment was rendered in favor of the plaintiff, which was affirmed on appeal on the theory that the transaction between Robinson and Rood was a bailment.

The supreme court of Utah has had this question

under consideration in several cases, and has uniformly held that such a contract creates a bailment. The cases are: Woodward v. Edmunds, 20 Utah, 118, 57 P. 848; Wetzel v. Deseret Nat. Bank, 30 Utah, 62, 83 P. 570; Turnbow v. Beckstead, 25 Utah, 468, 71 P. 1062; Manti City Sav. Bank v. Peterson, 30 Utah, 475, 86 P. 414, 116 Am. St. Rep. 862.

The supreme court of Michigan in Re Parsell's Estate, 184 Mich. 522, 151 N. W. 714, Ann. Cas. 1917A, 1160, had under consideration a writing in the following words:

"Almer, October 18, 1898.

"This is to certify that G. F. Parsell has this day taken of M. V. Edgar twelve ewe sheep to keep for the rental annually of one-half the wool and increase from said twelve sheep, for the term of three years from and after this date.

"G. F. Parsell."

In construing the writing, the court said: "The implied legal obligation arising from this agreement was to return the same sheep or their survivors at the end of the term. That this was a bailment there can be no question. Woodward v. Edmunds, 20 Utah, 118, 57 P. 848; Manti City Sav. Bank v. Peterson, 30 Utah, 475, 86 P. 414, 116 Am. St. Rep. 862; Robinson v. Haas, 40 Cal. 474; Smith v. Niles, 20 Vt. 315, 49 Am. Dec. 782. In the latter case the transaction was held to be a bailment and not a sale, although the animals were to be returned 'or those worth as much in all respects.' "

To the same effect are: Williams v. McGrade, 13 Minn. 174 (Gil. 165); Bellows v. Denison, 9 N. H. 293.

2. The real test in determining whether an agreement for the delivery of sheep is a sale or a bailment is the intention of the parties. The agreement in this case, being in writing, on its face clearly indicates that it is a bailment, and the conduct of the parties substantiates that view. The trial court was clearly right in holding the transaction constituted a bailment.

3. It is next contended by appellant that there was such a commingling of the sheep owned by Sustacha

and those of Hennen during the time the sheep were being run by Sustacha that the two bands of sheep cannot be segregated; hence the loss should be prorated between the Hennen sheep and the Sustacha sheep. While the court found that there had been a commingling of the sheep, we are of the opinion that, from all of the findings, the court was of the opinion, and impliedly found, that the Hennen sheep were capable of being segregated from the Sustacha sheep, though no special findihg to that effect was made. Every material fact, not found by the court, must be presumed in favor of the judgment. Jones v. Adams, 19 Nev. 78, 6 P. 442, 3 Am. St. Rep. 788; Welland v. Williams, 21 Nev. 230, 29 P. 403; Dutertre v. Shallenberger, 21 Nev. 507, 34 P. 449.

There is undisputed evidence in the record to the effect that Hennen told Sustacha not to get his sheep mixed with his own. It is also undisputed that he insisted that his sheep be kept branded with an H both by Sustacha and the receiver. In fact, the receiver after he took possession in May, 1933, did so brand at least some of his sheep. If he did not thus rebrand them all, it was his own fault. Receiver Ogilvie testified in part as follows:. "When the sheep came to the corrals this bunch that now has RB on them had H on them, when they came from the shearing corrals. I sheared them and had them branded with RB, and Hennen came out and told me to brand up a bunch to put on the reserve, and I branded this other bunch with H."

In view of this evidence, it was the duty of Ogilvie to keep Hennen's sheep branded so that they could be segregated at any time, and, even if there was not sufficient evidence to enable the trial court to pick out 1,590 sheep as being the property of Hennen, the court was nevertheless justified under the testimony in awarding that number of sheep to Hennen.

4. But we think the judgment of the court must be modified. Had there been no receivership, and Sustacha had made his payments according to the terms of the

lease, Hennen would have received, or at least been entitled to receive from Sustacha, $1,200 in cash and a return of his 1,590 sheep on October 31, 1933, the date of the expiration of the lease. The judgment which was entered July 27, 1933, awarded to Hennen his original 1,590 sheep, plus 525 lambs and a money judgment of $1,510.15. We are unable to see upon what theory Hennen should receive more than he would have received from Sustacha had he complied with the terms of his agreement, and none is suggested by counsel. In case of breach of contract, the injured party can only recover damages, and he cannot be damaged in a greater sum than he would have received had there been no breach.

We think the judgment should have been in favor of Hennen for the return of 1,590 sheep, and for a money judgment of $1,200, plus the cost of running the 1,590 sheep until October 31, 1933, the date of the expiration of the lease.

Other questions are discussed, but we do not consider them deserving specific consideration.

The judgment appealed from should be modified on the basis suggested.

It is ordered that, if respondent sign, acknowledge, and file with the clerk of the trial court, and file a copy thereof with the clerk of this court, a stipulation that the trial court may modify the judgment appealed from in accordance with the views herein expressed, within ten days from the receipt of a copy hereof, then the judgment and order appealed from be affirmed, subject to such modification, otherwise that the said judgment and order be reversed.