**STULL'S CHEMICALS, Inc.**

v.

**DAVIS et al.**

No. 14746.

Court of Civil Appeals of Texas.

Dallas.

Dec. 11, 1953.

Rehearing Denied Jan. 15, 1954.

Maverick, Putman & Putman and Joe Frazier Brown, San Antonio, for appellant.

Leake, Henry, Golden & Burrow, Dallas, and Hancock & Hancock, Waxahachie, for appellees.

YOUNG, Justice.

This is a venue case, appeal being from an order overruling plea of privilege filed by defendant Stull's Chemicals, Inc., to be sued in Bexar County. The petition of plaintiffs also complained of W. P. Luse, a resident of Dallas County, and was for damages allegedly sustained to their land and crop of growing cotton caused by defendant Luse's having sprayed certain hormone type herbicides, prepared and vended by Stull's Chemicals, upon his land which was adjacent to that owned by one of the plaintiffs and farmed by the other.

More particularly, petitioners alleged that this "44 Weed Killer" spray, when used by Luse or his agents on or about June 22, 1951, under the weather conditions then prevailing, drifted, or in some manner got onto plaintiffs' land and cotton, causing total loss of crop valued at $6,527.88, the damages prayed for; that the Stull compound used by defendant Luse contained a form of powerful ingredient known as 2.4–D, which, when applied to any vegetation in the most scientific manner and with the best suited and proper appliances, in addition to poisoning the plants to which it is directly applied, forms an invisible vapor not detectable by human senses, which vapor tends to drift or float with the air currents; and coming in contact with plants in adjacent fields susceptible to its poisonous effect, such as growing cotton, will kill or damage them severely; and that such substance by very nature is inherently dangerous to susceptible plants; that defendant Luse, his agents, and servants used this inherently dangerous substance at a time when they knew or should have known that a fine spray would be formed and due to existing conditions would carry onto the land of plaintiffs and do injury thereto; and as against defendant Stull's Chemicals, alleging in

various particulars the failure of such company to inform defendant Luse of the proper manner and use of such herbicide, of its volatile nature and highly dangerous tendency to drift and destroy susceptible plants in the vicinity; such defendant knowingly manufacturing a substance highly dangerous to broad-leafed plants, and which its agents and servants knew would destroy cotton; such acts and omissions of defendants constituting negligence and proximate cause of the damages sustained by plaintiffs. Prayer for relief by way of damages as above mentioned was for the value of their destroyed crop of cotton.

Under appellant's plea to the venue, it was a domestic corporation with office and place of business in Bexar County, denying in usual form the existence of any exceptions justifying suit in any county other than that of its residence; the controverting affidavits of plaintiffs invoking exceptions 14 and 23, art. 1995, V.A.C.S., for establishment of proper venue. These subsections provide: (14) "Lands.—Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie." (23, so far as pertinent): "Suits against a private corporation * * * may be brought in the county in which its principal office is situated; or in the county in which the cause of action or part thereof arose; or in the county in which the plaintiff resided at the time the cause of action or part thereof arose, provided such corporation * * * has an agency or representative in such county; * * *."

■ Pursuant to Rule 86, Texas Rules of Civil Procedure, appellant's plea of privilege becomes proof prima facie of its right to a change of venue until controverted; and as against said plea of privilege it is the burden of appellees to plead as well as prove the facts necessary to sustain venue. In the same connection under subd. 14, averments of the petition of plaintiff must be looked to for determination of whether

the damages sought are in nature of injury to land; and while land is mentioned in the petition, it is obviously incidental to the gravamen of suit, which was definitely for value of their growing crop of cotton—calculated in terms of probable yield of 36 bales, less cost of picking and ginning—or the sum of $6,527.88. The words "damages to land" as found in subd. 14 of the statute mean an injury to the possession or the freehold or estate; Knight v. Houston & T. C. R. Co., 93 Tex. 417, 55 S.W. 558; and an action for damages to a growing crop without allegations and proof of injury to the turf or sod itself does not constitute damages to land. Fort Worth & N. O. R. Co. v. Wallace, 74 Tex. 581, 12 S.W. 227. The damages sought being as above stated and not for injury to the land itself, the case of plaintiffs does not fall within the purview of sec. 14. Appellees are hence no more in position to maintain venue under the particular subdivision than were the parties in Ross v. Paine, Tex.Civ.App., 88 S.W.2d 736 (loss of pasture grass), or in City of Mineral Wells v. Alexander, Tex. Civ.App., 163 S.W.2d 721, City of Mineral Wells v. McDonald, 114 Tex. 113, 170 S.W. 2d 466, 467 (loss of peach crop).

■ Subdivision 23 (suits against private corporation), fixing venue in any county in which the cause of action or part thereof arose, contemplates a primary right in the plaintiff and the breach thereof; in other words, the act or omission on part of defendant without which there would be no cause of action or right of recovery; Ed Friedrich Sales Corp. v. Deitrick, Tex.Civ. App., 134 S.W.2d 760; and permits the action to lie in the county wherein some part of the transaction creating the primary right or some part of the transaction relating to the breach of that right, occurred; Transit Grain & Commission Co. v. Snapp, Tex.Civ.App., 148 S.W.2d 233; Stone Fort Nat. Bank of Nacogdoches v. Forbess, 126 Tex. 568, 91 S.W.2d 674. "Under the modern doctrine, there is little doubt that a person who has had no direct contractual relations with a manufacturer may nevertheless recover from such manufacturer for dam-

ages to property caused by the negligence of the manufacturer in the same manner that such a remote vendee or other third person can recover for personal injuries. The modern doctrine may be regarded as allowing recovery for injury or damage to property in all instances where a case in tort law of negligence can be made out against the manufacturer—that is, where the requisite elements of foreseeability and breach of duty are established, where the manufacturer can be found to have been negligent, and such negligence was the proximate cause of the property damage. Thus, under the modern doctrine, in spite of any lack of privity of contract, where the negligence of a manufacturer under the principles of the law of torts can be established in a given case, he will be held liable for property damage resulting from damage to houses, buildings, and structures, machines or apparatus, manufactured and processed substances such as mayonnaise, livestock, poultry, and other animal life, and plant life such as valuable flower bulbs and orchard fruit trees." 46 Am.Jur., Cumulative Supp. p. 40; see also 164 A.L.R. 593.

Appellant admittedly had no agent or representative in Dallas County, defendant Luse having purchased the herbicide directly from appellant Company at San Antonio. In detailed allegations concerning this defendant, plaintiff has charged failures on its part to inform Mr. Luse relative to the method and manner of using the preparation; in effect, that the seller's directions for safe use of the weed killer were insufficient and inadequate, considering the danger to adjacent and susceptible crops.

The chemical in question was made up and shipped by defendant Company to Mr. Luse as already stated; its president testifying at the hearing to precautions taken in sale of the preparation in that labels on each container, also accompanying literature, were as follows: (Label) "Caution: Prevent drifting of spray as this product may injure cotton, peas, beans, ornamentals, etc. (Coarse sprays are less likely to drift.) This product may injure alfalfa or clovers in pastures. Avoid contamination of waters

to be used for irrigation purposes. Sprayers which will subsequently be used for spraying insecticides on useful plants should be Thoroughly Washed With Ammonia Water, ( 1 oz. per gal. water) left to stand over night and Rinsed repeatedly to remove all traces of 2.4–D. Do not store this package near fertilizer, seeds, insecticides or fungicides. Vapors from areas sprayed with the product may injure susceptible plants in the immediate vicinity. Do not re-use this container. Improper re-use may damage susceptible plants and crops. Avoid inhaling spray. Avoid contact with skin, eyes and clothing." (Literature) "If spraying equipment is to be used for applying other spray materials it should be thoroughly washed with hot soap suds followed by soaking and washing with ammonia or baking soda. Flowers, shrubs, vegetable crops, and other susceptible plants should be protected from spray drift. Do not contaminate irrigation ditches or water used for domestic purposes. Soybeans, Beets, Potatoes, Alfalfa, Clover, Cotton and Tobacco are injured by 2.4–D and 2.4–5T sprays or drifts. Coarse sprays are less likely to drift. Do not store near seeds, fertilizers, fungicides or insecticides. Vapors from this product may cause injury to plants in the vicinity."

President Stull testified in the same connection that no admonition for safe use of the herbicide was furnished to Luse other than expressed in above cautions.

While the trial court has impliedly found that an issue of negligence was raised as against the chemical company, from a careful reading of the record, the evidence is deemed at least insufficient in such regard. In the first place, the weed killer is not shown to be *an inherently dangerous* compound, but on the other hand one that can be safely used by observance of the quoted precautions; in which event the manufacturer cannot be held to "strict liability" for damages resulting from its negligent use. See Walton v. Sherwin-Williams Co., 8 Cir., 191 F.2d 277, and Chapman Chemical Co. v. Taylor, 215 Ark. 630, 222 S.W.2d 820, for full discussion of the rule of strict liability imposed upon use of substances inherently dangerous.

Secondly, there is no evidence to effect that defendant Luse was not aware of the harmful effect of the herbicide resulting from a failure to follow directions for its use as carried by defendant company's containers and literature. Aforesaid "Cautions" in our opinion, known to Luse, constituted a sufficient answer to the assertions of liability as against the chemical company with respect to its failures "to inform defendant Luse" and alleged in subdivisions (a) to (f) of their alternative plea, with probable exception of the following: Appellees in reply brief cite art. 135b–2, V.A. C.S., prohibiting use of any hormone type herbicides except in accordance therewith and applicable regulations of the State Department of Agriculture; arguing that a 1950 regulation required the use of a proper gauge for determination of wind velocity, when spraying the herbicide; and that notice of such regulation should have been included in the mentioned cautions. Though art. 135b–2, Acts 51st Leg. 1949, Chapter 471, was in effect at time the weed killer compound was sold to Luse, same was repealed June 4, 1951 and supplanted by art. 135b–4, V.A.C.S., effective Sept. 1, 1953. Section 3 of the 1949 law provides: "No person shall use upon or apply to any land in this State any hormone type herbicides except in accordance with the provisions of this Act and with the rules and regulations promulgated by the Commissioner of Agriculture of the State of Texas governing such use under the authority vested in him by this Act, except those persons expressly exempt from the provisions hereof." Regulation 1, State Department of Agriculture, above mentioned, is not in evidence and we are cited to no law or rule requiring cognizance of same on our part by way of judicial notice. Obviously, under the circumstances, we are not in position to appraise the materiality or not of said regulation.

We conclude that the evidence adduced is insufficient to raise issues of negli-

gence as against defendant chemical company and that accordingly the cause must be reversed and remanded for another trial. Jackson v. Hall, 147 Tex. 245, 214 S.W.2d 458.

Reversed and remanded.