KAY & COMPANY, Inc., Appellant,

v.

LANARK CORPORATION, Appellee.

No. 13096.

Court of Civil Appeals of Texas.

Galveston.

April 25, 1957.

Jerry M. Hamovit, Houston, for appellant.

Hyder & Honts and Elton M. Hyder, Fort Worth, for appellee.

GANNON, Justice.

This is a venue appeal. The case is essentially one in detinue to recover judgment for the return of a certificate of corporate stock allegedly wrongfully withheld by defendant from plaintiff's rightful possession. The suit was filed in the District Court of Harris County by Kay & Company, Inc., a Texas corporation, domiciled in Harris County, against Lanark Corporation, a Texas corporation, domiciled in Tarrant County. Lanark Corporation seasonably filed plea of privilege. Plaintiff Kay & Company filed a controverting affidavit, relying upon that part of Subd. 23, Art. 1995, Vernon's Ann.Civ.Texas St., which permits suits against a private corporation to be brought "in the county in which the cause of action or part thereof arose." After hearing, the trial court sustained defendant's plea of privilege and ordered the suit transferred to Tarrant County for trial.

Plaintiff Kay & Company, Inc., appeals on the single point of error that the proof established "that it had a cause of action against the defendant corporation and that.

*an element* of this cause of action arose in Harris County." We overrule the contention.

We have grave doubts that the proof established any basis to support plaintiff's claim that it was rightfully entitled to possession of the stock certificate involved, in the personal and individual capacity in which it sued, but in the view we take of the case this is not necessarily material, and for purposes of disposition of the appeal it will be assumed that plaintiff had the lien upon the stock and stock certificate which it claims, and that this lien entitled it to possession. And it will be further assumed that it was entitled to possession as pledgee of the stock certificate upon some one of the bases upon which it sought to establish its right of possession. Our holding is that, assuming these highly questionable issues in plaintiff's favor, still the evidence shows no part of the cause of action which plaintiff asserts arose in Harris County or elsewhere than in Tarrant County.

The material facts are these: Kay & Company is a licensed, corporate, registered securities dealer and does business at Houston in Harris County, Texas. Prior to January 28, 1956, Ted Barbour, Trustee for Oaklawn Manor, a Louisiana corporation, requested Kay & Company as commission agent or broker to sell 60,000 shares of the Class B Common stock of Lanark Corporation held by Ted Barbour as trustee and represented by a stock certificate for that number of shares in his name as trustee. Barbour agreed to pay Kay & Company, Inc., a commission of $3,000 for its services should it be successful in obtaining a purchaser at a satisfactory price. Plaintiff approached the issuing company, the Lanark Corporation itself, offering the stock for sale, and an arrangement was worked out under the terms of which Lanark Corporation agreed to purchase the entire 60,000 shares at a price of 50 cents a share, but to accept and pay for the stock in installments, the first in the amount of $2,-500 and the second in the same amount, within thirty days. Lanark Corporation agreed to accept the remainder of the stock at the rate of 1,000 shares per month at the same price of 50 cents per share. The arrangement for the purchase and sale of the stock is evidenced by a letter from Lanark Corporation to Kay & Company dated January 28, 1956, being an offer, a telegram from Kay & Company to Lanark Corporation dated January 30, 1956, being an acceptance of the offer, and an "agreement" dated January 31, 1956, signed by Kay & Company as well as by its president, M. R. Karkowski, and by Lanark Corporation by R. Hamilton Clement, its president. The letter, telegram and agreement are as follows:

"January 28, 1956
"Kay & Company, Brokers & Dealers
2316 South Main Street
Houston 2, Texas
          "Attention: Mr. Kowkawsky
"Dear Sir:

"I am authorized and make the following offer which is acceptable, and if acceptable with you, we will consummate.

To accept and pay for $2500.00 worth of Class "B" Common stock of the Lanark Corporation for which you will transfer 5000 shares. We will accept another 5000 shares at $2500.00 cash within 30 days of the acceptance of the first stock. After this, we will guarantee to accept 1000 shares at the same price, 50¢ per share, per month. However, it is not our intention to convey that we will not pick up the full issue at any time we so desire, but the above is to guarantee you that we will pick up at least 1000 shares per month at 50¢ per share.

"The above offer is made if you will agree to give us an option on the entire amount, namely 60,000 shares. If we fail to exercise this option as set forth above, we will lose the option. If this is acceptable to you, wire acceptance and it is a deal.
          "Yours truly,
          "/s/   R. Hamilton Clement
                 R. Hamilton Clement
"RHC:pk        President"

"January 30, 1956
"Lanark Corporation
832 Monroe St.
Fort Worth, Texas
  "Attn: R. Hamilton Clement, President

  Referring To Your Letter January 28th I Am Accepting Your Offer And Am To-day Drafting You For $2500.00, Stock Certificate B-1, 60,000 Shares Lanark Corp., Common B., Attached To Draft: Upon Payment Of Draft Certificate Is To Be Released For Reissuance For 55,000 Shares Of Same Stock In Same Company And To Be Returned To Me As Agent.
  Kay and Company
  M. R. Karkowski, Pres.
  2316 So. Main St.
  Houston 2, Texas"

"January 31, 1956
  "This agreement entered into between the Lanark Corporation and Kay & Company &/or M. R. Karkowski, President of Kay & Company.
  "Whereas, the parties hereto have affixed their signatures and accepted the terms set forth in a letter dated January 28, 1956, from the Lanark Corporation to Kay & Company, Houston, Texas.

  The Lanark Corporation agrees to pay $2500.00 cash for 5000 shares of Class 'B' Common Stock of the Lanark Corporation for which Kay & Company will transfer 5000 shares to the said corporation and the Lanark Corporation agrees to take a like amount of shares at the same price within thirty (30) days of the acceptance of the above. After this the Lanark Corporation agrees to accept a minimum of 1000 shares at the same price, 50¢ per share, per month and each month thereafter until the entire 60,000 shares are transferred to the corporation. However, the Lanark Corporation holds the right to exercise its option on the remaining shares at the same price in any amount it sees fit at any time.
  "The above agreement is made under the express agreement that we possess an option on the full 60,000 shares. However, if we fail to exercise any part of the option as set forth, we shall lose the option on the remaining shares of the 60,000 that you have in your possession.

"Accepted:
/s/ Kay & Co.
Kay & Company

/s/ M. R. Karkowski
M. R. Karkowski, President of Kay & Co.

  "Accepted:
  /s/ R. Hamilton Clement
  Lanark Corporation
  R. Hamilton Clement, President"

  The proof is that the foregoing sale entitled Kay & Company to be paid a commission of $3,000 by Ted Barbour, Trustee, $1,400 of which remained unpaid at the date of trial. It is this unpaid $1,400 in commission which, among other things, Kay & Company says entitled it to a lien on and possession of the stock certificate involved.

  In its early stages the sale proceeded smoothly. The 60,000 shares of stock represented by a single certificate were delivered by Mr. Barbour to Kay & Company for handling. Kay & Company attached this certificate to a bank draft drawn on Lanark Corporation at Fort Worth in the amount of $2,500 with instructions to the bank that upon payment of the draft the stock certificate was to be released for reissuance for 55,000 shares of the same stock in the same company to be returned to Kay & Company as agent. This procedure was followed at successive intervals and in accordance with the understanding of the parties until Lanark Corporation had purchased and paid for 12,000 shares of stock and there remained 48,000 shares unpaid for, represented by a single certificate for that number of shares. When the time came for Lanark Corporation to purchase and pay for an additional 1,000 shares the 48,000 share certificate was attached to a draft and sent to a Fort Worth bank for collection. The bank delivered

to the Lanark Corporation at Fort Worth in Tarrant County the 48,000 share certificate. Whether with or without payment of the accompanying draft is not shown by the proof, but there is no indication in the proof that the bank's delivery of the stock certificate at Fort Worth to Lanark Corporation was wrongful or in disobedience of its duties as agent for Kay & Company and sub-agent of its principal. Therefore, it is established that Lanark Corporation came into possession of the disputed stock certificate rightfully. The proof shows that after obtaining the stock certificate for 48,000 shares, Lanark Corporation refused, after demand, to return it to Kay & Company or its principal. The reasons for this attitude and refusal on the part of Lanark Corporation are not disclosed by the record, but it is shown that after coming into possession of the stock certificate in Tarrant County by delivery through the bank there, Lanark Corporation has refused and continues to refuse, after repeated demands, to redeliver the certificate or to deliver any other for any part of the stock represented thereby.

Neither Ted Barbour, Trustee for Oaklawn Manor, nor Oaklawn Manor, is a party to this proceeding. It is prosecuted solely by Kay & Company in its own personal and individual capacity and right. It is, therefore, obvious that the suit is not based in whole or in part on the above set out contractual arrangements to which Kay & Company was not a party except as agent though for an undisclosed principal. Kay & Company's rights to possession of the stock are not based in whole or in part upon the contract of sale but are claimed to be supported entirely by transactions taking place in Harris County between itself, Barbour, Trustee, Oaklawn Manor, and certain additional parties other than Lanark Corporation.

As stated, the action is solely one seeking judgment requiring a return of the stock certificate involved, or, alternatively, for the wrongful conversion of any liens or rights therein which may exist in Kay & Company to secure it for the payment of its commissions or other sums.

Plaintiff claims as elements of its cause of action transactions between itself and parties *other than defendant* occurring in Harris County, in virtue of which it claims certain rights in the stock certificate entitling it to possession. These transactions between Kay & Company and such third parties other than defendant are said to give rise to its primary rights against defendant which, on defendant's unlawful retention of the stock certificate, were completed into a cause of action in detinue, or for conversion, against defendant. In support of its position, plaintiff cites such cases as Stone Fort National Bank of Nacogdoches v. Forbess, 126 Tex. 568, 91 S.W.2d 674, and Stull's Chemicals, Inc., v. Davis, Tex.Civ.App., 263 S.W.2d 806. However, in our opinion these and other contract cases are not applicable to the position in which plaintiff finds itself. No doubt they would be analogous were either Barbour or his beneficiary, Oaklawn Manor, the legal and/or beneficial owners of the stock, suing on the contract and for the breach of that provision of it which expressly or by implication required Lanark Corporation, after delivery and upon payment for any installment of stock to be purchased, to return a stock certificate representing all unpurchased stock.

But here we do not have an action on a contract, but one solely and simply in detinue, sometimes referred to as replevin in the detinet. In such cases, in our opinion, plaintiff's title or possessory rights constitute no part of the cause of action itself. At common law and by statute in many states, detinue and replevin are strictly local actions—Robinson v. Mead, 7 Mass. 353; Williams v. Welch, 5 Wend., N.Y., 290; Atkinson v. Holcombe, 4 Cow., N.Y., 45. This is not true in Missouri— See Crocker v. Mann, 3 Mo. 472, 26 Am. Dec. 684—at least in cases where a writ de bonis asportatis would lie. In Missouri

in such cases the action is held transitory and we think that conclusion supported by the better reason.

■ The foregoing authorities and other cases point up the elements of which the cause of action for detinue consists. As stated by the Supreme Court of Utah in Woodward v. Edmunds, 20 Utah 118, 57 P. 848, 849, where, as here, the action in nature was indistinguishable from common law replevin in the detinet, demand and refusal must be alleged in the complaint, because when the defendant comes lawfully into possession the action arises and takes its genesis only on wrongful refusal of return after demand. We quote: "In such case there is no wrongful detention and no right of action until a demand is made and met with a refusal. Phil.Code. Pl. § 492; 3 Bl. Comm. 151–153; Campbell v. Jones, 38 Cal. 507. It follows that immediately at the time when and place where the demand and refusal occur the cause of action arises, and *not until then*." (Emphasis supplied.) See also Nebeker v. Harvey, 21 Utah 363, 60 P. 1029, 1031, an action similar to the present, where the court said: "The cause of action arose when and where such demand was made and the refusal occurred. This court so held in Woodward v. Edmunds, 20 Utah 118, 57 P. 848."

■■ It does not follow that all facts which it is necessary to show in order to maintain suit on a cause of action constitute a part of the cause of action. Where an assignee brings suit in his own name and establishes a cause of action in his assignor, it is necessary for the assignee to show the assignment in order to recover, but that does not make the assignment a part of the cause of action; and so it is in actions of the present character in respect to the transactions whereby one obtains title to or right of possession of personal property in controversy. It is, of course, always necessary in order to maintain such an action to show either title or right of possession, but that is not to say that the title or right of possession necessary to maintain the action is a part of the cause of action itself. In Stone Fort National Bank of Nacogdoches v. Forbess, supra, Judge Critz, speaking for the Supreme Court, quoted a leading text stating that a cause of action is said to consist of a duty on the part of one towards another and the violation or breach of that duty or of plaintiff's primary right and the act or omission of defendant. In the present case, nothing occurred which gave rise, even incipiently, to any duty on the part of Lanark Corporation to Kay & Company as distinguished from its principal until the stock certificate in controversy was delivered to Lanark Corporation. This delivery, as we have seen, took place at Fort Worth when the bank there, acting as subagent of Kay & Company's principal, and with Kay & Company's consent, handed the certificate to Lanark Corporation. The delivery to Lanark Corporation took place at Fort Worth and Lanark's detention continues at Fort Worth, all in Tarrant County. Nothing took place between Lanark Corporation and Kay & Company as agent or otherwise in Harris County, which gave rise even incipiently to any duty on the part of Lanark Corporation to Kay & Company. Any duty which Lanark Corporation may owe Kay & Company to return to it the stock certificate in controversy or to pay it as for conversion for any beneficial interest Kay & Company may have therein took its genesis and arose wholly in Tarrant County. We hold that no part of plaintiff's cause of action arose in Harris County.

Judgment of the trial court is affirmed.